This is an appeal by the administrator of an estate from a final judgment entered in an interpleader action filed by Jefferson Federal Savings and Loan Association of Birmingham (Jefferson Federal). We affirm.
The circuit court, after a trial, found that, on January 30, 1980, Lecil Flurry opened an account with Jefferson Federal at its Five Points West office, which is in the City of Birmingham. The account was opened with a deposit of $10,000 and was assigned Account No. 02-22-200186. At the same time, Flurry purchased a six-month money market certificate with a minimum balance requirement of $10,000, which certificate bore the same account number and which stated: "This certifies that the Accountholder holds a savings account with the Opening Balance and for the initial term expiring on the Initial Maturity Date shown hereon in the above named savings institution." The total deposit was $10,000, but under the procedure *Page 764 
followed at Jefferson Federal, a savings account was opened, and a certificate of deposit was issued.
The certificate bore a maturity date of July 31, 1980. On that date, Flurry went to the Midfield Branch of Jefferson Federal, which is located in the Bessemer Cutoff. He deposited an additional $1,000 in Savings Account No. 02-22-200186, had the interest posted, and renewed the money market certificate in the amount of $11,000. The same savings account number appears on the certificate.
The certificate was renewed at the end of six months, and the underlying Savings Account No. 02-22-200186 retained a balance of at least $11,000 from July 31, 1980, through July 30, 1981, and the money market certificates were renewed each six months.
On March 31, 1981, Mr. Flurry and Truman W. Brewer, Sr., came to the Midfield Branch of Jefferson Federal, and Flurry added Brewer's name to Savings Account No. 02-22-200186. The account was changed to read "Flurry, Mr. Lecil or Brewer, Truman W., Sr. as joint tenants with right of survivorship and not as tenants in common. . . ." This change was also made on the signature card, which both men signed. The then outstanding money market certificate with a maturity date of July 30, 1981, was also changed by adding the following notation on the back side:
 "I, the owner of Money Market Certificate # 02-22-200186, request that said account change to read as follows: Mr. Lecil Flurry or Mr. Truman W. Brewer, Sr. as of March 13, 1981."
"(signed) Lecil Flurry"
Thereafter, the monthly interest checks were payable to "Mr. Lecil Flurry or Mr. Truman W. Brewer, Sr." These checks were endorsed and cashed by Mr. Flurry until his death on June 4, 1981. The interest checks for June and July of 1981 were payable to Flurry and Brewer, but were endorsed and deposited to "John R. Staik for the Estate of Lecil Flurry."
On July 30, 1981, John Reed Staik, as administrator of Mr. Flurry's estate, went to the main office of Jefferson Federal in downtown Birmingham and requested that the funds in Mr. Flurry's account be transferred to his account as administrator of the estate. The young lady with whom he dealt complied, and $8,000 was put into a Repurchase Investment Fund, Account No. 00-26-002219, and $3,000 was put into a Passbook Account No. 00-00-047067.
At about the same time, the last of July or early August, Mr. Brewer contacted Brenda Boykin, who had handled the change from an individual account from Mr. Flurry's name (at his request) to the joint account with Mr. Brewer. Mrs. Boykin told Mr. Brewer the funds in that account were his because it was a survivorship account. Upon checking, she found that the account had been closed, and the funds transferred to the estate account. When this was discovered, a "hold" was placed on the two estate accounts.
Jefferson Federal filed an interpleader action in the Bessemer Division on August 31, 1981, and deposited $11,112.90 with the court. Mr. Brewer and Mr. Staik were made defendant-claimants of the funds.
On September 21, 1981, Mr. Brewer filed an answer and motion to transfer the case to the Birmingham Division of the Circuit Court for the 10th Judicial Circuit.
On October 5, 1981, Mr. Staik filed his answer and a counterclaim, charging Jefferson Federal with conversion of the funds and seeking punitive damages.
Mr. Brewer's motion to transfer was granted after a hearing held on October 26, and the cause was transferred to the Birmingham Division on October 27, 1981.
On November 5, 1981, Mr. Brewer filed an answer and claimed the funds interpleaded as the survivor of the account held with Mr. Flurry as a joint tenant with right of survivorship. He demanded a jury trial.
The case was set for trial on May 20, 1982. On April 2, 1982, Staik filed an amended counterclaim, which merely restated the original counterclaim. In this pleading, he, for the first time, demanded a *Page 765 
jury. Jefferson Federal filed a motion to strike this jury demand, and Brewer withdrew his demand for a jury trial. After a hearing on this motion, the trial court granted Jefferson Federal's motion and tried the case without a jury.
The court held that the funds were the property of Brewer, applying § 5-16-45, Ala. Code 1975, and this Court's decision inStreet v. Hilburn, 295 Ala. 232, 326 So.2d 724 (Ala. 1976).
Section 5-16-45 (formerly Title 5, § 255 (4), Code 1940), which was involved in Street, reads as follows:
 "When a deposit has been made or shall hereafter be made in any savings and loan association in this state in the names of two persons, payable to either of such persons, or payable to the survivor of them, the said deposit shall, upon the death of either of said persons, become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposit there was any intention on the part of the persons making such deposit to vest the other with a present interest therein, irrespective of whether or not only one of said persons, during their joint lives had the right to withdraw such deposit and irrespective of whether or not there was any delivery of any account book or savings account book by the person making such deposit to the other of such persons. This section will also apply where a deposit is made in the names of more than two persons where there is a provision for survivorship. Nothing in this section shall be construed to prohibit the person making such deposits from withdrawing or collecting the same during his lifetime, nor shall the fact that such person had the right to withdraw or collect said deposit during his lifetime operate to defeat the rights herein provided for the person, or persons, surviving such depositor."
Street v. Hilburn noted that the statute is clear and simply provides that where funds are held jointly with right of survivorship, the survivor takes them regardless of the fact that only one of such persons deposited the funds. Such is the case here, and the trial court's ruling is correct.
On appeal, Staik argues that the trial court erred in not ordering the case retransferred to Bessemer. We cannot agree. The account was originally opened in Birmingham. All of Staik's transactions with Jefferson Federal took place in Birmingham. The alleged conversion, which is the only tort claimed, would have taken place in Birmingham. This cause of action did not accrue in the Bessemer Cutoff. Therefore, jurisdiction in the Bessemer Division is not exclusive under Local Act No. 213 (1893), as amended.
He next argues that the trial court erred in striking his jury demand or, alternatively, allowing Brewer to withdraw his jury demand without his consent. Rule 38, Alabama Rules of Civil Procedure. Again, we disagree. Staik made no demand for a jury trial at the time he filed his answer and counterclaim on October 5, 1982, and Brewer had not made a jury demand at that time. He has, therefore, waived his right, if any, to a jury trial. The requirement of the opposite party's consent to the withdrawal of the other's jury demand is based upon fairness. If one party has already demanded a jury trial, the opposite party need not do so, and he can rely on the demand made by his opponent and know that he cannot be ambushed by the withdrawal of that jury demand without his consent. However, that rule has no application under the facts here. There had been no jury demand by Brewer when Staik filed his answer and counterclaim. He could not, therefore, have relied on Brewer's demand. He could have demanded a jury trial when he filed his answer and counterclaim. Having failed to do that and having not relied on Brewer's demand, his consent to Brewer's withdrawal of his jury demand is not required, and the trial court correctly ruled in this regard. *Page 766 
Finally, Staik argues that the trial court erred in allowing two employees of Jefferson Federal to testify regarding conversations between them and Mr. Flurry, contending that such evidence is foreclosed by the dead man's statute, § 12-21-163, Ala. Code 1975. This argument has no merit. This statute excludes testimony only where four facts co-exist: (1) The testimony concerns a transaction with or a statement of a person now deceased; (2) the estate of the deceased will be affected by the outcome of the suit; (3) the witness has apecuniary interest in the suit; and (4) the interest of the witness is adverse to the decedent or his estate. Lavett v.Lavett, 414 So.2d 907 (Ala. 1982). There is a complete absence of any indication that either witness had any interest whatsoever in this litigation. Witness Boykin, who handled the transaction with Mr. Flurry in changing his account at his request to a joint one with Mr. Brewer, simply explained what she did. She confessed that she should have also changed the face of the certificate as well as the back side. The other witness, who closed the joint account and transferred the funds to Staik as administrator, also admitted her error. Had she consulted the central computer, it would have revealed that the funds were held jointly with right of survivorship, and she would not have closed that account and opened the estate account.
Jefferson Federal acted promptly and properly when it discovered its mistake and filed this interpleader action. The trial court ruled properly under the largely undisputed facts and applicable law.
The judgment is accordingly affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.