William Gary Watts and his wife, Sharon Lett Watts, died intestate in an automobile accident on March 6, 1983. There were no children born of their marriage, and neither had any lineal descendants.
The plaintiff, Jessie V.L. Lett, in her capacity as administratrix of the estate of Sharon Lett Watts, filed a complaint against the defendant, Ruby Jo Watts, in her capacity as administratrix of the estate of William Gary Watts, wherein she asked the court to declare that the estate of Sharon Watts was a joint owner of the numerous items of real and personal property which were in the name of Gary Watts and possessed by both Gary and Sharon Watts at the time of their deaths. The plaintiff also asked that a constructive trust be imposed on certain property claimed by the defendant. The plaintiff filed an amendment to her complaint, wherein she added a second count seeking a judgment against the defendant for work and labor done by Sharon Watts for Gary Watts from the date of their marriage on June 29, 1979, until their deaths. The defendant moved to dismiss the second count for failure to comply with the non-claim statute, § 43-2-350 (b), Ala. Code 1975. A ruling on the defendant's motion was reserved until after the trial. The case was tried before a judge who, after hearing all of the evidence, entered a judgment, including extensive findings of fact. The pertinent portions of those findings are as follows:
(1) W.T. Watts was the father of Gary Watts and, during his lifetime and until his death on August 12, 1979, operated a business known as "Watts Construction Company," which was a sole proprietorship individually owned by W.T. Watts.
(2) Immediately after the death of his father, Gary Watts took over and continued to operate the business.
(3) Watts Construction Company was a trade name under which Gary Watts did business from August 12, 1979, continuously until the date of his death.
(4) W.T. Watts's account with the Alabama Department of Industrial Relations and the subsequent account number assigned to Gary Watts d/b/a Watts Construction Company indicate that the business operated by Gary Watts was a successor business to that owned by his father, and the records of the Alabama Department of Industrial Relations further indicate that Gary Watts acquired the company as a going business from his father and that it was a sole proprietorship individually owned by Gary Watts during his lifetime.
(5) The records of the Motor Fuels Division of the Alabama Department of Revenue also indicate that the business was a sole proprietorship individually owned by Gary Watts during his lifetime.
(6) All of the work done by Gary Watts under the trade name Watts Construction Company for Alabama Power Company, hereinafter referred to as APCo, was completed pursuant to contracts entered into with APCo by Gary Watts, individually, and APCo looked to him solely for the performance of those contracts, and APCo, for its own business purposes, regarded Watts Construction Company as being a sole proprietorship individually owned by Gary Watts. All business insurance maintained by Watts Construction Company in compliance with contractual responsibilities entered into by Gary Watts with APCo was in the name of Gary Watts solely, and all *Page 140 
records related to the insurance noted that the company was a sole proprietorship owned by Gary Watts.
(7) All of the reports filed with the Internal Revenue Service (I.R.S.) by APCo in connection with payments made in accordance with contracts entered into with Gary Watts, d/b/a Watts Construction Company, designated his social security number as the appropriate taxpayer payee who should report the payments to the I.R.S.
(8) Gary Watts inherited from his father the equipment and other personal property necessary to continue the operation of the company, and subsequent to the continuation of the business and from the revenues received from contractual payments by APCo, he acquired other items of equipment and personal property which were being used in the business on the date of his death, so that the equipment and other personal property being used in the business consisted of certain inherited property and also of certain property acquired by purchase, and, in some cases, by the trading in of inherited property on the newly purchased property, as well as by the trading in of subsequently acquired property.
(9) For the calendar years 1979, 1980, and 1981, Gary and Sharon Watts filed jointly with the I.R.S., with each return being duly executed by both. On each return, Gary Watts listed his occupation as "construction" and reported all of the income of Watts Construction Company for the year applicable and listed himself as the "proprietor" of Watts Construction Company and the same "employer identification number" for federal tax reporting purposes as was assigned by the I.R.S. to his father when he operated the business. On each return, Sharon Watts listed her occupation as "housewife."
(10) For calendar years 1979, 1980, and 1981, Gary and Sharon Watts filed returns with the Alabama Department of Revenue, with each return being duly executed by both. On each return, Gary Watts listed his occupation as "construction" and Sharon Watts listed her occupation as "housewife."
(11) On each of the federal returns, Gary Watts paid self-employment taxes based on his net earnings doing business as Watts Construction Company; however, on each return, Sharon Watts neither reported earnings from self-employment, nor paid any self-employment taxes for social security purposes.
(12) Sharon Watts was a cosmetologist from July 1, 1978, until 1982, as reported on an application for employment which she executed with the U.S. Postal Service and which further stated that her "reason for wanting to leave" that employment was "started college."
(13) Sharon Watts was issued a substitute teacher's certificate on December 8, 1982, which was in effect at the time of her death, and she did some substitute teaching pursuant to the certificate.
(14) On the date of her death, Sharon Watts was employed by the U.S. Postal Service as a substitute mail carrier.
(15) During the winter quarter of 1983 and until her death, Sharon Watts was enrolled as a full-time college student, pursuing a degree in elementary education.
(16) Funds held on deposit in a checking account, which were interpleaded into the court and held on deposit by the clerk, were the property of Gary Watts, d/b/a Watts Construction Company.
(17) On the date of her death, Sharon Watts owned a quilt and certain other personal property and personal effects located inside the residence owned by Gary Watts and occupied by the couple.
(18) All other property was owned by Gary Watts, individually.
The trial court then held as follows in its decree:
(1) That Watts Construction Company was a sole proprietorship individually owned by Gary Watts and is now the property of the defendant.
(2) That the quilt and other personal property and effects located inside the residence occupied by the couple and belonging *Page 141 
to Sharon Watts are the property of the plaintiff.
(3) That the net proceeds from the checking account of Gary Watts, d/b/a Watts Construction Company, held on deposit by the clerk of the court, are the property of the defendant.
(4) That all other property found to belong to Gary Watts individually is the property of the defendant.
After the trial, the court granted the defendant's motion to strike the plaintiff's second count, and the plaintiff appealed. We affirm.
The plaintiff contends here, as she did at trial, that Gary and Sharon Watts were partners in the business of Watts Construction Company and argues that the trial court erred in its finding that Watts Construction Company was a sole proprietorship individually owned by Gary Watts at the time of his death. We disagree.
There was evidence that both Gary and Sharon Watts worked in the business of Watts Construction Company, that both executed loans to cover the operating expenses of the company, and that both wrote checks on the company account for business and personal purchases. The plaintiff relies on § 10-8-20 (4), Ala. Code 1975, which creates a presumption of partnership where a person receives a share of the profits of a business. The plaintiff argues that Sharon Watts shared in the profits of the business by drawing checks on the business account for personal purchases and shared risk of loss by executing loans for business purposes, thereby raising a presumption that the couple were partners, which was not rebutted in the evidence. Again, we disagree.
There is no express partnership agreement, and under the evidence produced at trial, the court was justified in its finding that no partnership existed. The trial court heard all of the evidence, examined the exhibits, and observed the demeanor of the witnesses. It decided that, under the circumstances, it was not the intention of Gary and Sharon Watts to act as a partnership. Where a trial court decides a factual issue on conflicting evidence, this Court will not reverse unless there is no evidence to support the factual determination so made. Burbic Contracting Co. v. Willis,386 So.2d 419 (Ala. 1980). There was ample evidence introduced at trial to support the trial court's findings and, consequently, there was no error in its determination.
The plaintiff next contends that the trial court erred by excluding the testimony of William David Taylor. Again, we disagree.
During the course of the trial, the testimony of Taylor, a witness for the plaintiff, was excluded as violating §12-21-163, Ala. Code 1975, commonly known as the Dead Man's Statute. Taylor had filed a claim against the estate of Gary Watts, alleging that he was a partner with Gary Watts in an aviation business and that he owned an interest in certain property belonging to that partnership. The property claimed by Taylor was also claimed by the defendant to be a part of Gary Watt's estate.
The defendant contends that Taylor's claim to this property rendered him incompetent to testify under the statute.
The plaintiff insists that Taylor's claim presented no direct and immediate conflict with the estate of Gary Watts to the extent that he would be rendered incompetent to testify by virtue of a pecuniary interest in the result of the case.
The statute provides in pertinent part as follows:
 "[N]o person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding . . . unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in *Page 142 
evidence by the party whose interest is opposed to that of the witness. . . ."
Thus, the statute has been construed to prohibit testimony where four facts co-exist: (1) the testimony concerns a transaction with or a statement of a person now deceased; (2) the estate of the deceased will be affected by the outcome of the suit; (3) the witness has a pecuniary interest in the suit; and (4) the interest of the witness is adverse to the decedent or his estate. Staik v. Jefferson Federal Savings and LoanAss'n of Birmingham, 434 So.2d 763 (Ala. 1983).
There were two estates interested in the result of this case. The estate of Sharon Watts would be increased if the plaintiff were successful, while the estate of Gary Watts would be diminished if that should occur. Taylor's testimony concerned transactions and conversations that he had had with both Gary and Sharon Watts. Taylor had a pecuniary interest in the case by virtue of his claim of ownership to property also claimed by the defendant for the estate of Gary Watts and by the plaintiff for the estate of Sharon Watts. In this respect, his interest was adverse to both estates.
The purpose of the Dead Man's Statute is to prevent testimony by a living witness having a pecuniary interest in an estate as to transactions with or statements made by persons who are no longer alive to contradict such testimony. The purpose of the statute was served in this case by the trial court's proper exclusion of Taylor's testimony.
The plaintiff finally contends that the trial court erred in striking her second count.
On March 12, 1983, letters of administration in the estate of Gary Watts were granted to the defendant. The plaintiff filed her complaint for declaratory judgment on April 21, 1983. The plaintiff filed an amendment to her complaint on December 2, 1983, adding a second count for work and labor done. After the trial, the court granted the defendant's motion to strike the second count as violating the non-claim statute, § 43-2-350, Ala. Code 1975.
The plaintiff insists that this was reversible error because the amendment was merely an assertion of an alternative theory of recovery concerning funds and property against which a timely claim had previously been made in the original complaint. The plaintiff, relying on Barrett v. Fondren,262 Ala. 537, 80 So.2d 243 (1955), and Rule 15 (c), Alabama Rules of Civil Procedure, argues that the amendment should relate back to the date the original complaint was filed.
The defendant, relying on this Court's holding in Motley v.Battle, 368 So.2d 20 (Ala. 1979), argues that the plaintiff's claim for work and labor cannot be saved by the relation back doctrine of Rule 15 (c). We agree.
The non-claim statute, in pertinent part, provides:
 "All claims against the estate of a decedent . . . whether due or to become due, must be presented within six months after the grant of letters testamentary or of administration; and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited."
The purpose of the non-claim statute is to expedite the orderly settlement of estates by giving the personal representative notice of "all claims against the estate." InBarrett, supra, this Court held that a civil action filed within six months after the grant of letters of administration was a sufficient presentation of a claim against an estate to give the personal representative such notice.
In the present case, there were no allegations in the action for declaratory judgment and the claim for the imposition of a constructive trust to put the defendant on notice that a claim for work and labor would be made. We hold that the trial court did not err in striking the count for work and labor as being barred by the non-claim statute. *Page 143 
Other errors argued by the plaintiff this Court finds without merit in that there was evidence introduced at trial sufficient to support the trial judge's decision.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.