[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 250 
Mrs. Branch, a former teacher with the Greene County Board of Education (board), sued the board, the individual members of the board, and Mr. Kirksey, the Superintendent of Education of Greene County (superintendent), for damages totaling $4,250,000. Her nine-count complaint contained both contract and tort counts.
The trial court granted a partial summary judgment in favor of the board as to all of the tort claims against the board. A summary judgment was further entered in favor of one member of the board as to all counts against her. The case was tried before a jury. At the conclusion of all of the testimony, the trial court granted a motion for a directed verdict in favor of the board and all of the individual members of the board. The teacher's fraudulent misrepresentation-legal fraud claims against the superintendent were submitted to the jury for its decision. The jury returned a verdict in favor of the superintendent. A final judgment was rendered by the trial court in favor of the superintendent, pursuant to the jury's verdict. After the teacher's motion for a new trial was overruled by operation of law, the teacher appealed to the Supreme Court of Alabama. Regardless of the amount claimed and of the nature of the claims, we now exercise jurisdiction over the appeal because it was transferred to this court by the supreme court.
The teacher, through very able counsel, argues six primary issues. While the essential facts shall be separately developed in more detail as to each issue, the following general preliminary facts are now presented in order to enable a better and more complete understanding of the case.
The teacher was tenured, having been employed by the board for about twenty-six years. The superintendent notified the teacher by a letter dated November 16, 1983, that, following his recommendation to it, the board had determined that it intended to cancel the teacher's contract upon the grounds which were detailed in the letter. *Page 251 
The teacher filed her contest of the proposed job termination.
On December 13, 1983, the day set for the hearing before the board, the teacher appeared for the hearing, accompanied by her brother-in-law and her attorney. After about two hours of negotiations and conferences between the attorneys, the superintendent, the teacher, and the brother-in-law, the following agreement was hammered out:
"CONSENT SETTLEMENT
 "LET IT BY THESE PRESENTS BE KNOWN, that Elizabeth Branch, hereinafter known as Teacher, and the Greene County Board of Education hereby agree and compromise on the following terms and stipulations:
 "WHEREAS, on November 16, 1983, the Superintendent sent to the Teacher a letter notifying her that the Greene County Board of Education, on his recommendation, had voted an intention to cancel the Teacher's employment contract for good and just cause; and
 "WHEREAS, the specific charges to be presented to the Board are that on November 9, 1983, at Paramount High School, the Teacher allegedly struck three students with an umbrella without cause or justification, and on the same day at Carver Junior High School, the teacher allegedly struck two students with an umbrella without cause or justification; and
 "WHEREAS, the Board also charges certain alleged misconduct by the Teacher on September 21, 1981, and requested the Teacher to take a leave of absence to seek professional help in resolving her personal and emotional conflicts, and the Teacher declined that request and allegedly engaged in certain acts beyond her scope of authority; now
 "THEREFORE, in consideration for the Board's agreement to drop all charges and dispense with a hearing on said charges, the Teacher agrees to submit to the Board this day her resignation effective May 30, 1984, or at the time her accrued sick leave expires, whichever occurs first. The Teacher further agrees to seek professional help for her mental and physical condition during the interim between this date and the effective date of her resignation. The Teacher understands that the Board does not intimate any promises, implied or otherwise, regarding reinstatement or any other matter not clearly expressed in this compromise settlement;
 "FINALLY, the Teacher, in consideration of the Board's permitting her to resign, waives and agrees to forego any litigation, either before the Tenure Commission or any court, state or federal, regarding the charges and the substance of this compromise agreement."
The board convened, and the hearing was opened, whereupon it was reported to the board by the board's attorney that the proposed agreement had been reached. The above agreement was read into the record. The board approved it, and it was signed by the teacher and by three members of the board on behalf of the board. The teacher immediately signed and presented to the board her written resignation, which was to take effect pursuant to the terms of the settlement agreement. On that same day the board accepted that resignation.
In early May 1984, the teacher applied to the superintendent for reinstatement to her job. The superintendent decided not to recommend to the board that she be reinstated. Consequently, the board did not consider or act upon that request of the teacher.
We now turn to the separate appellate issues.
 I
The teacher argues that the trial court erred in granting a directed verdict in favor of the board. No issue is made concerning the previous order of the trial court which granted a summary judgment in favor of the board as to the tort claims of the teacher against the board. Therefore, we are here concerned only as to the directed verdict in favor of the board as to the teacher's contract counts. *Page 252 
The pivotal factual question is whether the board ever promised the teacher that she would be reemployed by it.
The teacher's daughter testified that both before and after the December 13, 1983, board hearing the superintendent told her either that her mother would be reemployed or that her mother would be considered for reemployment if she went to a doctor.
The brother-in-law of the teacher testified on her behalf that the superintendent told him on the date of the hearing that, if the teacher obtained professional help and obtained "a clean bill of health," she could reapply like anyone else for reemployment and that she would be duly considered. The witness further swore that the board had nothing to do with the settlement negotiations until the proposed consent settlement was presented to the board for its action thereon.
The teacher testified that, before the board's hearing, the superintendent told her that, if she would go to the doctor, she would be reemployed and that her attorney, her brother-in-law, and the superintendent each told her that she would get her job back. On December 13, 1983, she did not talk with any member of the board. Later, she saw a physician. She also saw a psychologist for a psychological evaluation, but the results of such evaluation were not revealed in the court transcript.
The attorney who represented her at the hearing before the board testified that no board member promised to reemploy the teacher and that the superintendent never promised the attorney or the teacher's brother-in-law that the teacher would be reemployed.
The superintendent testified that the sick leave salary of the teacher could not be paid to her without evidence of her being sick, which was one reason for the requirement in the settlement agreement that she seek professional help. He further stated that, when she applied for reinstatement in May 1984, he decided not to recommend it to the board. The witness testified that he did not at any time before or during the consent settlement negotiations make any promises to the teacher or her brother-in-law that the teacher would be reemployed if she saw a doctor regarding her health.
The signed, written settlement agreement provided that the teacher understood that the board made no promise, implied or otherwise, regarding her reinstatement.
In short, there was no evidence that the board ever promised to reemploy or to reinstate the teacher. Under the law of Alabama the superintendent does not have the authority to employ a teacher without the concurrence of the board. The superintendent must recommend the employment of a teacher to the board, whereupon the board may concur or disagree with such recommendation; however, before a teacher is legally employed, the board must concur with the superintendent's recommendation.Marsh v. Birmingham Board of Education, 349 So.2d 34 (Ala. 1977).
If we assume that the superintendent did promise to reemploy this teacher, the teacher could not rely thereon since the superintendent had no authority to rehire her without the concurrence of the board, which rehiring was never promised by the board or acted upon by the board. As against the board, the teacher cannot claim to have altered her position to her detriment for any such act or promise of the superintendent which the law warns her she could not depend upon.Marsh, 349 So.2d at 36.
Any oral agreement to reemploy between the teacher and the superintendent was a nullity without the concurrence of the board. The settlement agreement was clear and explicit that the board made no implied or express promise to the teacher that she would be reemployed by it.
Because of a lack of proof that the board or any individual member of the board ever promised the teacher that she would be reemployed and because of the above law, the trial court correctly granted the directed verdict for the board and for its individual members as to the teacher's contract claims. *Page 253 
 II
Learned counsel for the teacher forcefully contends that, as to the fraud and fraud-related counts, the trial court should not have granted a directed verdict in favor of the individual board members.
Whether a representation is made willfully, recklessly, or mistakenly, the critical elements of legal fraud consist of (1) a false representation (2) concerning a material existing fact (3) upon which the plaintiff has relied and (4) has been damaged as a proximate result thereof. Ala. Code (1975), §6-5-101; Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala. 1981). When the alleged misrepresentation is predicated upon a promise to perform some act in the future, the plaintiff must also prove that, when the promise was made, the promisor had an actual intent not to perform the promise and had a present intent to deceive the plaintiff. Kennedy Electric Co. v.Moore-Handley, Inc., 437 So.2d 76, 80 (Ala. 1983).
The members of the board did not participate in reaching the settlement agreement. They only approved it after it was formally presented to them at their December 13, 1983, meeting. There was no evidence that any member of the board ever promised to reemploy the teacher. Any promise which the superintendent might have made to the teacher would not bind them since there is no evidence that any of them individually or collectively authorized him to do so or that they individually or collectively ever ratified any such promise. The settlement agreement itself excludes any such promise on the board's behalf.
Since there was no evidence before the jury that any individual board member ever made a false representation to the teacher, the trial court did not err in directing a verdict for the individual members of the board upon the fraud and fraud-related counts. Earnest, 401 So.2d at 759.
 III
In this issue the teacher presents several specific evidentiary matters for our decision.
Her first contention is that the trial court erred in overruling an objection to a question which was propounded to the teacher's brother-in-law. Since the objection was made after the question was answered by the witness, the ruling of the trial court cannot be considered on appeal. Thornton v.Pugh, 491 So.2d 259 (Ala.Civ.App. 1986).
Next, it is argued that the teacher's hearsay objection to a certain question which was propounded to the superintendent should have been sustained, but no hearsay authority is cited as to that evidentiary problem. Therefore, we cannot consider that particular contention. Henderson v. Alabama A MUniversity, 483 So.2d 392 (Ala. 1986); Rule 28(a)(5), Alabama Rules of Appellate Procedure.
The teacher also complains about the answer of her brother-in-law that he could not recall a certain matter unless the defendant's attorney, who was cross-examining him, refreshed the memory of the witness. However, we have nothing to review as to that aspect since there was no objection made and no ruling thereon by the trial court.
The teacher's last evidentiary complaint under this issue concerns the following which occurred while the superintendent was the witness:
 "Q. Exactly what did Mrs. Branch tell you regarding the complaint that had been filed?
"A. (Witness reads).
 "MR. MANLEY: Object to his reading what was said. If he can't recall, he can't testify.
"THE COURT: What did Mrs. Branch tell him?
"MR. MANLEY: Yes, sir.
"THE COURT: Overruled.
"MR. MANLEY: If he can remember.
"Q. Can you remember what Mrs. Branch told you?
"MR. CHESTNUT: He can refresh his memory. *Page 254 
 "MR. WILLIAMS: But first he has to testify —
 "THE WITNESS: That was a long discussion about what had transpired down there. She told me something to the effect — I can't give it to you verbatim — something to the effect that children do not respect elders and unless something is done, something is going to happen down there, happen big as it happened once before; something to that effect.
"MR. WILLIAMS (resumed).
 "Q. Did you take any notes at the time she spoke to you?
"A. Yes. This is a result of the notes.
"Q. Can you tell me exactly what the notes said?
"A. I can read you exactly what's on it.
"Q. No. Do you remember —
 "A. I cannot tell you exactly what the note said. I can't remember.
 "Q. Then read the note and see if that refreshes your recollection. You can't read —
"THE COURT: You can't read it out loud.
"A. (Witness reads).
 "After having received the complaints, I called her in for a conference. I asked her about it. She admitted, yes, she had hit the children. As a matter of fact, she told me she hit one child as many as two times with her umbrella. After a lengthy conference, during that time she attempted to end the conversation before it was over, to get up and leave. I told her I wasn't through, sit down until it was over. Then I told her about what I had heard from the principal at Paramount. She made statements about children do not respect elders and someone has got to teach them how to act, something to that respect.
 "After a lengthy conference, we closed the conference. I wrote up the conference and prepared this for the board members.
"Q. You prepared those notes at that time?
"A. Yes.
 "Q. Those notes reflect what Mrs. Branch said to you at that time?
"A. Yes."
The memorandum was not read to the jury. It is obvious that it refreshed the recollection of the witness, and it was his right to refer to and to look at the memorandum while he was testifying. C. Gamble, McElroy's Alabama Evidence, § 116.02(5) (3d ed. 1977).
 IV
It is next argued that the consent settlement in effect permanently barred the teacher from employment by the board and that it is void since a contract which restrains someone from exercising a lawful profession is ordinarily void under § 8-1-1
of the Alabama Code of 1975.
A provision of the consent settlement simply states, in effect, that the board did not promise the teacher either impliedly or otherwise that she would be rehired. No provision in the settlement agreement prohibits future employment of the teacher by anyone or by any board of education. The settlement agreement is not in violation of § 8-1-1.
 V
Here, the teacher argues that the settlement agreement violates the Alabama statutes on teacher tenure.
Charges were brought to cancel the teacher's contract pursuant to § 16-24-9 of the Alabama Code of 1975. An agreement was reached, whereby the charges against her were dropped and whereby the teacher agreed to resign. In accordance with that agreement the teacher submitted her resignation, and it was accepted by the board. She argues that, under those circumstances, the contract did not comply with § 16-24-9 and is, consequently, void.
A teacher is permitted to cancel her contract during the school term when such cancellation is mutually agreed upon. Ala. Code (1975), § 16-24-11 (1987 Repl. Vol.). When the teacher resigned and it was accepted by the board, "the school board was no longer required to carry out any of its *Page 255 
responsibilities which were imposed by § 16-24-9. Atkins v.Birmingham City Board of Education, 480 So.2d 585
(Ala.Civ.App. 1985). The resignation and acceptance thereof effectively and lawfully terminated his employment as a teacher and eliminated his property and tenure rights to that job." Swannv. Caylor, 516 So.2d 699, 701 (Ala.Civ.App. 1987).
Here, the teacher's resignation and the board's acceptance thereof were pursuant to § 16-24-11, and further compliance with § 16-24-9 was no longer required in order to lawfully terminate her employment contract with the board. Swann,516 So.2d 699.
 VI
The attorney who represented the teacher on December 13, 1983, at the board hearing, in the negotiations leading up to the settlement agreement, and in the joint preparation of that agreement in conjunction with the board's attorney was called to testify on behalf of the defendants. The teacher objected to three questions which were asked of the attorney on the ground of the attorney-client privilege. The first question concerned whether the witness participated in the drafting of the settlement agreement, and the teacher's objection was overruled thereto. The second question was whether the superintendent participated in the negotiations to arrive at the settlement agreement, and the teacher's objection was overruled, with the trial court observing that the inquiry did not seek privileged material.
The attorney-client privilege extends to the substance of the client's communication to the attorney, as well as to the attorney's advice in response thereto. There is no privilege when a client's communication to an attorney is made with the intent that it be further communicated to a third party.Sovereign Camp, Woodmen of the World v. Pritchett, 203 Ala. 33,81 So. 823 (1919). Likewise, the privilege does not exist when such client to attorney communications are made in the presence of a third party whose presence is not necessary for the successful communication between the attorney and the client. C. Gamble, McElroy's Alabama Evidence, § 392.01 (3d ed. 1977).
The trial court properly overruled the teacher's objections to those first two questions, for they did not seek to elicit any privileged matters. The teacher's objection to the third question as to what the attorney suggested to his client was sustained as being privileged and properly so. We find no error as to this issue.
 Conclusion
Finding no reversible error as to any raised issue, we affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.