TAYLOR, Judge.
The appellant, Frank Federico Bertarelli, was convicted of theft of property in the second degree, a violation of § 13A-8-4, Code of Alabama 1975. He was also convicted of violating the Ethics Act.
The State’s evidence tended to show that Larry Armstead, a captain in the Montgomery Police Department, suspecting that certain officers were stealing money, planted drugs and $2,300 in cash in an apartment where alleged drug sales were said to take place. A police trainee was also used as a decoy outside the apartment. He had $540 on his person.
The appellant, an officer in the Montgomery Police Department at the time of the offense, and five other officers, Officers Wooten, Mosko, Barnett, Jones, and Lay, composed a group in the department known as Retake Our Turf (ROT). The unit was informed of a possible drug arrest at the place where the drugs and money were planted. The first officers on the scene, Officers Jones and Lay, searched the man acting as a decoy and then the officers went into the apartment. They did not find the drugs and money, which had been placed in a heater vent. The appellant, Mosko, Wooten, and Barnett then arrived. Appellant Bertarelli, along with Officers Mosko and Wooten, then went into the apartment and commenced a search of the premises.
The appellant was questioned concerning the incident, when no money was turned in with the drugs. The appellant made a confession and stated that he and Officer Wooten arrived after Jones and Lay and started searching the apartment. The appellant stated that he found the money and drugs in a heater vent. He said Officer Wooten then took the bag with the money, took the money out, and gave the bag back to the appellant. The appellant gave an envelope containing $560 to the police when questioned about the incident. The appellant said that he had met Wooten at the car and Wooten divided up the money with him.
At trial, the appellant testified that Wooten gave him an envelope containing $540 in cash and told him to impound it. He thought this was all the money found at the scene. He said he was going to impound the money as “found property,” when he was taken to be questioned.
The police trainee, acting as a decoy, who was outside the apartment when it was searched, testified at trial that he could hear the officers as they searched the residence. He heard one say, “Jackpot.” Officer Caffey testified that he told the officers who composed the ROT unit, about someone selling drugs. He then directed the unit to the location where the drugs and money had been planted. Officer Caffey monitored the incident as it happened, and he testified that there was no mention of any money being found, just the drugs being recovered. The money was never all recovered. However, several hundred dollars were found in the sewers under the police station.
I
The appellant contends that the following, which occurred during the cross-examination of Mosko, was error:
“A [Mosko]: Yes, ma’am.
“Q You did appear, did you not?
“Q [Prosecutor]: Sir, do you remember being given the opportunity to testify before the Montgomery County Grand Jury on April 11th, 1990, at approximately 1:35 p.m. concerning this investigation?
“A Yes, ma’am, I did.
“Q And you were advised of your so-called constitutional Miranda rights, were you not?
“A Yes, ma’am, I was.
“Q The same rights that you were advised of when you were questioned by Captain Gantt?
“A Yes, ma’am, I was.
“Q And that was done orally just as it was by Captain Gantt?
“A BY MR. FEAGA: Yes, ma’am.
“Q And those same rights were given to you, including the right that anything you say can be used against you in a court of law?
“A Yes, ma’am.
*214 “Q And after being given those rights, isn’t it true, sir, that knowing that and being familiar with the right and understanding them, when you were asked are you willing to answer questions that might be posed to you by any authorized person in this proceeding today, you said no, that you were not willing to answer questions?
“A That’s true; yes, ma’am.
“MR. TALIAFERRO: I object to that. I move for a mistrial at this point, your honor.
“THE COURT: Overruled. The mistrial is denied.”
We agree with the appellant. We believe the extensive questioning of Mosko concerning whether he invoked his Fifth Amendment right in front of the grand jury resulted in reversible error.
It is impermissible for the prosecution to refer to the defendant’s invocation of his Fifth Amendment right to remain silent. Craig v. State, 375 So.2d 1252 (Ala.Cr.App.), cert. denied, 375 So.2d 1257 (Ala.1979); See also, Brownlee v. State, 545 So.2d 151 (Ala.Cr.App.1988), aff’d, 545 So.2d 166 (Ala.1989), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). It then follows that a prosecutor may not impeach a defendant by questioning him on his invocation of his Fifth Amendment right to remain silent. See United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); Ex parte Wiley, 516 So.2d 816 (Ala.1987); Dickey v. State, 390 So.2d 1177 (Ala.Cr.App.), cert. denied, 390 So.2d 1178 (Ala.1980); Houston v. State, 354 So.2d 825 (Ala.Cr.App.1977), cert. denied, 354 So.2d 829 (Ala.1978).
The United States Supreme Court in Grünewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), reversed a conviction when the defendant was impeached by questioning him concerning the invocation of his Fifth Amendment right to remain silent when he was brought before the Grand Jury. The United States Supreme Court in Grunewald stated the following concerning invoking the Fifth Amendment right:
“Recent re-examination of the history and meaning of the Fifth Amendment has emphasized anew that one of the basic functions of the privilege is to protect innocent men. [citation omitted.] ‘Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.’ ”
353 U.S. at 421, 77 S.Ct. at 982. The Court also made several observations concerning the nature of testifying before the grand jury. They stated:
“Innocent men are more likely to plead the privilege in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings, where cross-examination and judicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial, truth.”
353 U.S. at 422, 77 S.Ct. at 983. Witnesses called before the grand jury are compelled witnesses who are not represented by counsel. See Grünewald.
The reasoning of Grunewald has been applied to witnesses other than the defendant. See Nezowy v. United States, 723 F.2d 1120 (3rd Cir.1983), cert. denied, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984); United States v. Williams, 464 F.2d 927 (8th Cir.1972). Some courts have applied the harmless error doctrine in this context. See Nezowy, supra (Pennsylvania). (At least one other court has said that the harmless error doctrine could not be applied. See Williams, supra (Missouri).). The Court of Appeals for the Eastern District of Pennsylvania stated in Nezowy:
“Our holding, i.e. that questioning by the government concerning a witness’ fifth amendment claim of privilege before a grand jury will constitute trial error, obviously includes a defendant party as well as a non-party witness. We emphasize, however, that the issue presented in this case involves only the *215 corrective action required when a non-party, ... is questioned. Thus ... we have no occasion to address the adoption of any per se rule providing for automatic reversal in the event a defendant himself is questioned by the Government as to his fifth amendment privilege.
“At least one other court of appeals subsequent to Grünewald has taken the position that, subject to a harmless error determination, questioning about use of the fifth amendment privilege is impermissible in all cases, whether the witness be the defendant or a disinterested third party.”
723 F.2d at 1125, footnote 6, citing United States v. Natale, 526 F.2d 1160 (2d Cir.1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).
We adopt the harmless error rationale used by the courts in Nezowy and Natale. “Error resulting from fifth amendment cross examination (is) harmless when (1) the witness’ testimony was remote from the crime charged, and (2) there was no likelihood that the jury would have become confused and would link the defendant ... to the witness’ ... assertion of the privilege.” Nezowy, 723 F.2d at 1125. However, we can not say that the questioning of Mosko in this case resulted in harmless error.
In the present case, Mosko’s testimony would not meet either prong of the analysis. Mosko was one of the officers involved in the offense. His testimony was not remote and we believe that any reference to his fifth amendment right was a link to the defendant. “The danger that the jury made impermissible use of the testimony by implicitly equating the plea of the Fifth Amendment with guilt is, in light of contemporary history, far from negligible.” Grunewald, 353 U.S. at 424, 77 S.Ct. at 984. The extensive cross-examination of Mosko concerning his fifth amendment right which he invoked in front of the grand jury, resulted in ineradicable harm to the appellant.
In the interest of judicial economy, we will address the appellant’s remaining issues, which may arise in a new trial.
II
Appellant Bertarelli further argues that the statement he made should not have been allowed into evidence on grounds that it was coerced. The appellant states that he was told that he would lose his job and go to jail unless he made a statement. There is no question that the appellant was read his Miranda rights. The appellant contends that his confession should not have been received into evidence, he says, since it was not voluntarily given.
A lengthy hearing on his motion to suppress was held. The testimony at the hearing revealed that the appellant was questioned by Captain Gantt, Captain Arm-stead, and Major Owens. Major Owens testified to the following:
“Q [Defense counsel]: — Did you make the statement to him: You’re not the target of this investigation, but if you cooperate with us, you’ll keep your job; if you don’t cooperate with us, I’ll sign warrants against you and have you put in jail tonight?
“A [Major Owens] — No, sir.
“Q Did you ever say anything like that to him?
“A No, sir. He kept asking about his job. I told him I could not guarantee his job.
“Q Did you ask him to cooperate with you, though?
“A Yes, sir.
“Q Did you tell him that it would be better for him if he cooperated with you?
“A After he kept asking me about his job and what was going to happen. I told him if he cooperated, that I would do all I could do to keep him from being prosecuted, but I could not promise him anything.
“Q Did you tell him that you’d have criminal charges brought against him or have him put in jail that night if he did not cooperate?
“A No, sir.”
Other testimony at the hearing indicated that the alleged statements made to the appellant, concerning his being locked up *216 and losing his job, occurred after he made the statement to his fellow officers. Defense counsel himself stated this to the trial court. The following occurred during the questioning of Officer Caffey at the suppression hearing:
“MR. TALIAFERRO: [defense counsel] Just as an offer of proof, I’d like to state if this officer were allowed to testify to that, my evidence that I have states that he would be able to testify that he did hear threats made by Armstead and Owens to the six officers involved in this incident, including Officer Bertarelli, late that night on the 13th or early in the morning on the 14th, concerning keeping them there all the night, keeping them there and having their breakfast shipped in. They were going to lock some of them up if they didn’t cooperate. That’s my offer of proof in this matter.
“THE COURT: But that’s after the statement that you’re attempting to suppress.
“MR. TALIAFERRO: Yes.”
Since the appellant does not question whether he was read his Miranda rights, we need only determine if there is evidence in the record to support the conclusion of the trial court that the statement was voluntary. See Magwood v. State, 494 So.2d 124 (Ala.Cr.App.1985), aff’d, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
We find that the evidence presented at the suppression hearing concerning alleged statements made to the appellant to elicit his confession indicate that these statements were made after the appellant had already made his statement. Consequently, the statements did not affect the voluntariness of his statement. Chatman v. State, 380 So.2d 351, 354 (Ala.Cr.App.1980).
To determine whether a statement is voluntary requires consideration of the “totality of the circumstances.” See Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). “As a general matter, this means that it is necessary to assess carefully the characteristics and status of the person who gave the confession and also the conduct of the police in obtaining it.” Lafave, Criminal Procedure § 6.2 (1984). “Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background experience, conduct of the accused....” Magwood, 494 So.2d at 135. “ ‘The question in each case is whether the defendant’s will was overborne at the time he confessed,’ Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). ‘In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort.’ ” (Emphasis added.) Haynes, 373 U.S. at 513, 83 S.Ct. at 1343.
As Judge Bowen, speaking for this court in Ball v. State, 489 So.2d 675 (Ala.Cr.App.1986), stated:
“Even if ... comments to the defendant were improper, they were made after the defendant had already made her statement. Consequently, the defendant’s statement was not induced by or the result of the officer’s comments. Here, as in Rowe v. State, 421 So.2d 1352, 1355 (Ala.Cr.App.1982), ‘the confession was not the product of a direct or implied promise. The oral confession was completed at the time [the promise of] help was mentioned and therefore the offer could not have induced the confession.’ ”
489 So.2d at 677.
“Since any discussion of possible lenient treatment of appellant occurred after appellant’s confession, no inducement to confess was present.” Chatman, 380 So.2d at 354. The record supports the decision of the trial court to receive the appellant’s statement into evidence. As we stated in Dixon v. State, [Ms. 3 Div. 414, September 21, 1990] — So.2d -(Ala.Cr.App.1990):
“The trial judge made no specific findings of fact with regard to the voluntariness of the confessions. Inasmuch as he denied the defendant’s motion to suppress, however, we can presume that he found the confession to be voluntary. A *217 trial judge’s finding of voluntariness need only be supported by a preponderance of the evidence, Seawright v. State, 479 So.2d 1362, 1367 (Ala.Cr.App.1985), and ‘will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.’ Malone v. State, 452 So.2d 1386, 1389 (Ala.Cr.App.1984).”
— So.2d at —.
Ill
The appellant next argues that the trial court erred in allowing the prosecution to ask questions of Officer Mosko and the appellant concerning communications which took place when the four officers involved in the incident were conferring with an attorney who, at the time, represented all four officers. The following occurred during the questioning of Mosko:
“Q [Prosecutor]: Later that evening after you were interviewed in the early morning hours, isn’t it true that this defendant told you that he told the police that he had found the money?
“MR. TALIAFERRO: Your Honor, she may want to qualify that. There might be an attorney/client privilege involved here.
“THE COURT: Overruled.
“MS. BROOKS [Prosecutor]: He’s not an attorney.
“THE COURT: Overruled.
“THE WITNESS: Ma’am. I don’t remember whether he said that or not.
“Q Didn’t he tell you that he had found some money?
“A Ma’am. I don’t remember whether he said that or not that night. He may have; he may not have. I don’t remember.
“Q You were down at police headquarters being, as you put it in your — as Mr. Taliaferro put it, interrogated and strip searched about some missing money, and you don’t remember if he said anything about finding any money?
“A No, ma’am, I don’t. I really don’t. You’re talking about a day that started at 7:00 that morning, and it was 3:00 in the morning when we got through.”
He was questioned further about the money being recovered by the appellant and in each instance said that he could not remember what the appellant had said. The appellant argues that what the appellant said during the interview with the attorney, who at the time represented Mosko, was privileged communications. We agree. However, we do not believe that the witness’s answers resulted in prejudice to the appellant.
Attorney-client privilege is defined in § 12-21-161, Code of Alabama 1975. This section states:
“No attorney or his clerk shall be competent or compelled to testify in any court in this state for or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner.”
This privilege applies to third persons who are present and are represented by the same attorney or have an interest in the proceedings. See International Brothers of Teamsters, etc. v. Hatas, 287 Ala. 344, 252 So.2d 7 (1971). In Hatas, our Supreme Court noted that we have held in the past that a “third person who was present at a conference between an attorney and his client may testify as to facts which came to his knowledge during the conference.” That court stated that having a third party present “defeats the confidential nature for the conference and thereby the privilege.” Hatas, 252 So.2d at 27.
However, they held that this rule does not apply when the:
“third person is also a client as to the subject matter discussed in the conference or has a common interest in the matters discussed.”
“ ‘Where two or more persons employ an attorney as their common attorney *218 their communications to him in the presence so far as strangers to the confidential conference was concerned, and are privileged as to them. Likewise, where two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers...
252 So.2d at 27-28. We note that the “burden of showing the confidential character of a communication rests on the party objecting to the introduction of the evidence. This party must establish the relationship of attorney and client as well as other facts demonstrating the claim of privileged information." Swain v. Terry, 454 So.2d 948, 953 (Ala.1984). We believe that Mosko’s knowledge of what the appellant stated during the conversation they had with their attorney was privileged.
For the reasons stated in Part I, the judgement is reversed and the cause remanded to the Circuit Court of Montgomery County so that the appellant may obtain a new trial.
REVERSED AND REMANDED.
All the Judges concur.