646 So.2d 661 (1994)
Fred W. CRENSHAW
v.
Lewis W. CRENSHAW.
1930606.
Supreme Court of Alabama.
August 26, 1994.
Russell L. Irby, Eufaula, for appellant.
R. Richard Hartley of Hartley, Hickman & Russell, Greenville, for appellee.
MADDOX, Justice.
Lewis Crenshaw sought a judgment declaring that his father, F.W. Crenshaw (the decedent), did not make a valid inter vivos gift of certain personal property to the defendant, Fred W. Crenshaw. The trial court entered such a judgment. Fred W. Crenshaw appealed. The appeal presents three issues: (1) whether the testimony of the decedent's attorney and the attorney's secretary was properly excluded as subject to the attorney-client privilege; (2) whether the testimony of witness Betty Crenshaw Hendricks was inadmissible under the Dead Man's Statute or was privileged under the attorney-client privilege; and, if the trial court did not err in regard to those first two issues, then (3) whether the evidence was sufficient to support the trial court's judgment declaring that the decedent had made no valid inter vivos gift to the defendant.
F.W. Crenshaw died on June 30, 1989, leaving three children: Fred Crenshaw, Lewis Crenshaw, and Betty Crenshaw Hendricks.[1] On June 8, 1989, he was a patient at L.V. Stabler Memorial Hospital in Greenville, Alabama, when his attorney, Elisha C. Poole, and Poole's secretary, Barbara Ellison, came by to execute three real estate deeds. Fred and Betty were also present in the decedent's hospital room at that time. The decedent executed three deeds, granting each of his three children a portion of his real estate. The defendant, Fred Crenshaw, alleges that, *662 when the father executed the deeds, the father made a statement giving Fred the father's house and all of the personal property located in the house. The father had built an annex onto his house in 1937. Fred had lived in the main part of his father's house until Fred married in 1952, at which time he moved into the annex of the house. The deed to Fred granted him the real property on which the house was located. The decedent's will named Lewis and Fred as co-executors and devised his personal property to his three children in equal parts. Lewis, as co-executor, sought to divide the personal property in the house according to the father's will; Fred contended, however, that all of the personal property in the house had been given to him by the father at the time the father conveyed the house to him. Lewis brought this declaratory judgment action to determine his rights.
The case was tried without a jury. Before the trial, Lewis filed a motion in limine to exclude the testimony of Elisha Poole, Barbara Ellison, Betty Crenshaw Hendricks, and Fred Crenshaw. The court granted the motion in part, disallowing the testimony of Attorney Poole and his secretary because of the attorney-client privilege. The court also excluded some of Fred's testimony under the provisions of the Dead Man's Statute.
Fred contends that the trial court erred in excluding the testimony of Attorney Poole and his secretary, Barbara Ellison, arguing that the attorney-client privilege does not apply to communications between the attorney and the client made in the presence of third persons and that Attorney Poole was only representing the father, not Fred or Betty, at the time the statement was allegedly made and while Fred and Betty were present. Lewis contends that the attorney-client privilege was not waived by the presence of Betty and Fred, because Bertarelli v. State, 585 So.2d 212, 217-18 (Ala.Cr.App. 1991), holds that the attorney-client privilege "applies to third persons who are present and are represented by the same attorney or have an interest in the proceedings."
We recognize that the attorney-client privilege "does not exist when ... client to attorney communications are made in the presence of a third party whose presence is not necessary for the successful communication between the attorney and the client." Branch v. Greene County Bd. of Educ., 533 So.2d 248, 255 (Ala.Civ.App.1988) (citing Charles W. Gamble, McElroy's Alabama Evidence, § 392.01 (3d ed. 1977)). The decedent is alleged to have made a statement to the effect that he wanted Fred to have the house and everything in it. This statement was allegedly made not only in the presence of his attorney and his attorney's secretary but also in the presence of Fred and Betty. Attorney Poole was the attorney for the decedent. Betty testified that he did not represent her, and there is no indication that he represented Fred. In International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Hatas, 287 Ala. 344, 366-67, 252 So.2d 7, 27 (1971), this Court said:
"The rationale behind [the rule that statements between an attorney and client in the presence of a third party constitute a waiver of the privilege] is that since a third person is not involved in the relationship between the attorney and his client, the presence of such third party defeats the confidential nature of the conference and thereby the privilege. See Wigmore on Evidence, McNaughton Revision, Vol. VIII, § 2311, p. 599.
"Neither that rationale nor the rule which it supports applies when the third person is also a client as to the subject matter discussed in the conference or has a common interest in the matters discussed. The majority rule applicable where such a relationship existed at the time of the conference is stated thusly in 141 A.L.R. at p. 562:
"`Where two or more persons employ an attorney as their common attorney their communications to him in the presence of each other are regarded as confidential so far as strangers to the conference are concerned, and are privileged as to them. Likewise, where two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference *663 are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers....'"
(Emphasis in original.) We conclude that Betty and Fred did not have a sufficient common legal interest in the subject matter discussed in the decedent's hospital room to make the attorney-client privilege applicable. In fact, the interests of Betty and Fred could be considered adverse to each other, or to those of the decedent.
In Bertarelli, the attorney-client privilege was held to apply because when the communications at issue took place "the four officers involved in the incident were conferring with an attorney who, at the time, represented all four officers." 585 So.2d at 217. The third parties in this case, Betty and Fred, do not have common interests similar to those found in Bertarelli and in Hatas,[2] where the privilege was also held to apply. We hold, therefore, that the attorney-client privilege was waived in this case, because third parties who did not have common interests in the subject matter discussed were present when the statements at issue were alleged to have been made. Consequently, the trial court improperly excluded the testimony of Attorney Poole and that of his secretary Barbara Ellison on the grounds of the attorney-client privilege; therefore, the judgment must be reversed.
Fred also contends that the trial court did not consider Betty's testimony, but treated it as subject to either the Dead Man's Statute or the attorney-client privilege, and that the court erred in not considering it. The trial court did not exclude Betty's testimony; she was allowed to testify. There is no indication that the trial court refused to consider her testimony. To the contrary, the trial court did not include Betty's testimony when it partially granted the motion in limine and excluded the testimony of Attorney Poole, his secretary Barbara Ellison, and Fred. The trial court did not sustain objections at trial to Betty's testimony, and the trial judge even ordered a transcript of Betty's testimony to consider before ruling in the case. Therefore, we must reject this contention.
We do address, however, whether it was proper for the court to allow, and then to consider, Betty's testimony. We conclude that it was.
Betty's testimony is not barred by the Dead Man's Statute, § 12-21-163, Ala.Code 1975.
"The Dead Man's Statute prohibits a witness from testifying when
"`(1) the testimony concerns a transaction with or a statement of a person now deceased; (2) the estate of the deceased will be affected by the outcome of the suit; (3) the witness has a pecuniary interest in the suit; and (4) the interest of the witness is adverse to the decedent or his estate.'"
Edwards v. Vanzant, 492 So.2d 990, 993 (Ala. 1986), quoting Lett v. Watts, 463 So.2d 138, 142 (Ala.1984). Betty's testimony does not come under the Dead Man's Statute because the fourth factor is not met; her interest is not adverse to that of the decedent's estate. Betty's interest is consistent with that of the estate, because if the alleged gift is not valid, the estate gains, and if the estate gains, Betty gains. Therefore, her testimony is not barred by the Dead Man's Statute. Because we have already concluded that the attorney-client privilege was waived, we must conclude that the court properly allowed Betty's testimony.
Because the trial court erred in excluding the testimony of Attorney Poole and his secretary Barbara Ellison, we do not reach the issue of the sufficiency of the evidence. We reverse the judgment and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*664 HOUSTON, STEAGALL and INGRAM, JJ., concur.
COOK, J., concurs in the result.
HORNSBY, C.J., and ALMON and SHORES, JJ., dissent.
SHORES, Justice (dissenting).
I respectfully dissent. Because this case was heard without a jury, I would affirm the trial court's judgment under the ore tenus rule. I would also allow the personal representative of a deceased client to claim the attorney-client privilege.
"Under the `ore tenus rule,' a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987); McCrary v. Butler, 540 So.2d 736 (Ala.1989). The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment. McCrary v. Butler, supra; Jones v. Jones, 470 So.2d 1207 (Ala.1985)."
Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989).
I believe that a personal representative of a deceased should be able to claim the attorney-client privilege. Although this is an issue of first impression in Alabama, many other states allow the personal representative of a deceased to claim the privilege. See Annotation, Waiver of attorney-client privilege by personal representative or heir of deceased client or by guardian of incompetent, § 3, 67 A.L.R.2d 1268, 1271-74 (1959), and supplement thereto. The personal property that was the subject of the alleged inter vivos gift to Fred was the same property that F.W. Crenshaw's will devised in equal parts to Betty, Fred, and Lewis. Therefore, I believe that both Betty and Fred had a sufficient "common interest in the matters discussed," International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers v. Hatas, 287 Ala. 344, 366, 252 So.2d 7, 27 (1971), and that, therefore, F.W. Crenshaw did not waive his attorney-client privilege merely because Fred and Betty were present in his hospital room. See also Bertarelli v. State, 585 So.2d 212, 217-18 (Ala.Crim.App. 1991).
The trial court heard the testimony of the witnesses and was able to observe their demeanor and to judge their credibility. A careful review of Betty Hendricks's testimony reveals that she was asked if her father mentioned her brother Fred by name when he made the alleged inter vivos gift, but that she never testified that she heard her father mention Fred's name when he made the alleged oral inter vivos gift of personalty. Because there is credible evidence to support it, I would affirm the judgment of the trial court.
ALMON, J., concurs.
NOTES
[1] Betty Crenshaw Hendricks testified that in Birmingham she is also known as "Mary Elizabeth."
[2] In Hatas, the court held that "Partin [a named defendant] and Miss Kelly were both interested in a legal sense in the subject matter discussed" with the attorney and that the attorney-client privilege was not waived. 287 Ala. at 367, 252 So.2d at 28. It is not clear from the opinion in Hatas exactly what Miss Kelly's interest was, but she had been questioned by the F.B.I. to determine if Partin had been in Alabama on the date of an alleged accident. 287 Ala. at 364, 252 So.2d at 25. It appears, however, that her interests were aligned with those of Partin or his co-defendant, the Teamsters union.