Juanita Lynch ("Juanita"), individually and through her son Buddy Lynch ("Buddy"), as her attorney-in-fact (collectively "the Lynches"), appeal the trial court's ruling allowing an attorney who had previously represented Juanita to testify in an action seeking to set aside a deed regarding allegedly confidential communications. We affirm.
 Factual and Procedural Background
On August 30, 2004, Juanita executed a deed conveying a 40-acre tract of land to her daughter, Rebecca Lynch Hamrick, the defendant below. According to Hamrick's testimony, Juanita asked Hamrick to take her to an attorney in Huntsville so she could execute a new will and convey the land to Hamrick. Hamrick chose Julie Wills from a listing of attorneys in the telephone book because the advertisement said that Wills specialized in elder law. *Page 13 
Wills met with Juanita and Hamrick together in her office. Wills, who testified at trial over the Lynches' assertion of the attorney-client privilege, could not remember whether she had spoken to Juanita alone at any point during their meeting. Hamrick, however, testified that Wills asked her to leave the room during part of the consultation. On the stand, Wills explained that she was cautious in approaching the representation because a potential beneficiary had brought Juanita in to have a will drafted and to convey real property. Wills testified that she believed that Juanita was competent to execute the will and the deed, and she noted that Juanita's testamentary scheme, including the deed, divided her estate evenly between Hamrick and her brother, Buddy. Further, Hamrick gave Wills a document entitled "Chronology of Events," drafted by Hamrick, that showed that the rest of the real property that Juanita had owned had previously been conveyed to Buddy. Wills later telephoned Juanita at her home, "so [she] could talk to her when her daughter was nowhere around, because [Wills] wanted to verify her desires and what she wanted to do . . . and that she wasn't being influenced by her daughter or anyone else." Satisfied that the disposition of the estate and the real property was in accord with Juanita's wishes, Wills prepared the instruments and scheduled a second appointment.
At the second meeting, Wills spoke with Juanita alone, where "[she] confirmed again that she wanted to deed the property to her daughter. [Juanita said that she had] given other property to her son, and this is what she want[ed]." Juanita executed and Wills notarized the warranty deed Wills had prepared, and Hamrick's husband recorded it the next day.
A few days later, Buddy learned that Juanita had conveyed the 40-acre parcel of property to Hamrick. Buddy testified that, when he asked his mother about giving the land to Hamrick, "[s]he told [him] that she didn't know that she had done anything, that she didn't realize [she had done] that." Buddy, as his mother's attorney-in-fact by virtue of a power of attorney previously executed by his mother, sued to set aside the deed, alleging that Hamrick "deceived and tricked" his mother into executing the deed. Juanita intervened in the action in her own right. Through her own attorney, Juanita requested that the trial court set aside the deed pursuant to § 8-9-12, Ala. Code 1975, alleging that she was induced to execute the deed based upon Hamrick's representations and promises that she would care for Juanita during her lifetime.[1] Juanita explained that Hamrick could not afford to care for her and that she wanted the deed set aside so that she could use the real property to support herself.
Hamrick gave notice that she intended to depose Wills, and the Lynches and Wills moved to quash the deposition on the basis of the attorney-client privilege. The trial court ruled that the events surrounding the preparation and execution of the deed were not privileged. Although Wills's deposition was never taken, she testified at trial, over the Lynches' objection, to the conversations she had had with Juanita and Hamrick in her office and with Juanita by telephone. On direct examination by Hamrick, Wills's testimony was limited to *Page 14 
her perceptions regarding Juanita's capacity to convey the real property and whether the conveyance was voluntary.
The Lynches' attorneys then cross-examined Wills. The Lynches had Wills read from her notes regarding the two meetings and her telephone call to Juanita, and they questioned Wills regarding Juanita's capacity to convey the property and to execute the will. They also asked Wills to testify about the types of questions Wills had asked Juanita and the advice Wills had given her. At the Lynches' request, Wills testified about communications she had had in private with Juanita. When the Lynches asked to see the "Chronology of Events" Hamrick had prepared, Wills's counsel objected,[2] and the Lynches' attorney stated: "We waive her privilege at this point." Later, the Lynches asked Wills about a communication she had had with Juanita after the attorney then representing Juanita contacted her requesting copies of the instruments Juanita had signed. Again, Wills asserted the attorney-client privilege, and the Lynches' attorney said: "We're still waiving."
The trial court declined to set aside the deed, concluding that "the plaintiff's have failed to show that part of the consideration for the conveyance was a promise of support." It also denied the Lynches' postjudgment motions. The Lynches appealed, arguing that the trial court erred in allowing Wills to testify.
 Standard of Review
"`Whether a communication is privileged is a question of fact to be determined by the trial court from the evidence presented. . . .'" Exxon Corp. v. Department ofConservation Natural Res., 859 So.2d 1096, 1103
(Ala. 2002) (quoting Exparte DCH Reg'l Med. Ctr.,683 So.2d 409, 412 (Ala. 1996)). The burden is on the party asserting the attorney-client privilege to establish the existence of an attorney-client relationship as well as other facts demonstrating the claim of privileged information. Exparte DCH Reg'l Med. Ctr., 683 So.2d at 412. We review a trial court's ruling on whether a privilege exists to determine whether the trial court, in so ruling, exceeded its discretion.Exxon, 859 So.2d at 1103.
 Analysis
Hamrick argues that any communications Juanita had with Wills in Hamrick's presence were not privileged and that Juanita waived the privilege as it pertained to communications between Juanita and Wills when Hamrick was not present. We agree.
Rule 502(b), Ala. R. Evid., provides, in pertinent part:
 "A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client or a representative of the client and the client's attorney or a representative of the attorney. . . ."
The attorney-client privilege belongs to the client, but it may be asserted by the client's attorney on the client's behalf. Rule 502(c), Ala. R. Evid. Further, Rule 1.6. Ala. R. Prof. Cond., requires the attorney to assert the privilege on the client's behalf, except (1) when the client gives his or her consent to the disclosure, (2) to prevent the client from committing a criminal act the attorney believes will likely result in imminent death or substantial *Page 15 
bodily harm, or (3) to establish a claim or defense on behalf of the attorney in certain circumstances. Rule 510, Ala. R. Evid., provides that the client may waive the privilege: "A person upon whom these rules confer a privilege against disclosure waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter." See also Ex parte Great AmericanSurplus Lines Ins. Co., 540 So.2d 1357, 1359 (Ala. 1989) (recognizing that the attorney-client privilege may be waived by the client directly or constructively and that waiver may be accomplished by disclosing part of the communication).
The Lynches first argue that, because "[Hamrick] was interested in the subject matter of Ms. Wills'[s] representation, i.e., the deed," the communications remained privileged even when Hamrick was present. The Lynches' brief at 12. The Lynches cite the following statement from International Brotherhood ofTeamsters, Chauffeurs, Warehousemen Helpers of America v.Hatas, 287 Ala. 344, 367, 252 So.2d 7, 28 (1971):
 "`[W]here two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers.'"
(Quoting 141 A.L.R. at 562.) In Hatas, the plaintiff in a wrongful-death action attempted to question Partin, a named defendant, about a conversation Partin had had with an attorney named Beddow in the presence of a third party, Miss Kelly, who accompanied Partin. The Teamsters Union, another named defendant, argued that Beddow was not Partin's attorney and, therefore, that any statements Partin made to Beddow were not protected by the attorney-client privilege. The Court held, however, that "Partin and Miss Kelly were both interested in a legal sense in the subject matter discussed at the conference with Mr. Beddow, Jr." Hatas, 287 Ala. at 367,252 So.2d at 28. It is not clear from the opinion what interest Partin and Kelly shared.
In Crenshaw v. Crenshaw, 646 So.2d 661 (Ala. 1994), however, this Court discussed the application of the exception stated in Hatas to facts similar to this case. F.W. Crenshaw was in the hospital when his attorney, Elisha C. Poole, and Poole's secretary, Barbara Ellison, visited him so he could execute three real-estate deeds. F.W.'s son, Fred Crenshaw, and daughter, Betty Crenshaw Henricks, were also present. Fred alleged that F.W. said at this meeting that he was giving his house and all the property inside it to Fred. F.W. deeded the house to Fred, but F.W.'s will divided all of his personal property equally among his three children. When the executor attempted to divide the personal property that was inside the house, Fred claimed it all as part of the gift from his father. The trial court did not allow the attorney or his secretary to testify, citing attorney-client privilege. After first noting that there was no indication that Poole represented either Fred or Betty, this Court held:
 "Betty and Fred did not have a sufficient common legal interest in the subject matter discussed in the decedent's hospital room to make the attorney-client privilege applicable. In fact, the interests of Betty and Fred could be considered adverse to each other, or to those of the decedent."
Crenshaw, 646 So.2d at 663. The presence of F.W.'s two children served to waive the attorney-client privilege because "`the *Page 16 
presence of such third party defeats the confidential nature of the conference and thereby the privilege.'" Crenshaw,646 So.2d at 662 (quoting Hatas, 287 Ala. at 366,252 So.2d at 27).
Similarly, in this case, Hamrick did not have "a sufficient common legal interest in the subject matter" of the representation. Crenshaw, 646 So.2d at 663. The Lynches claimed that Juanita gave Hamrick the property in exchange for a promise to support her, a promise Hamrick denies having made. The Lynches also argued to the trial court that one of the reasons they wanted the deed set aside was that transferring the property had consequences on Juanita's eligibility for Medicaid benefits. The Lynches pointed out that the value of the property could be considered in calculating Juanita's assets if she applied for benefits within a certain time after such a transfer. These allegations demonstrate that Juanita's and Hamrick's interests were not sufficiently aligned to preserve the attorney-client privilege because Hamrick's interests in having her mother transfer the property were adverse to her mother's interests in retaining it.
Next, the Lynches argue that Hamrick's "presence was necessary at the meeting because [Hamrick] set the meeting and drove plaintiff Juanita Lynch there." The Lynches' brief at 12. However, there is no evidence indicating that Hamrick's presence in the meeting was necessary for Wills to prepare Juanita's will and the deed. Wills testified that she addressed her questions to Juanita and that "[she] got [Juanita] to explain things to [her] and talk to [her]." Wills stated that "[w]hen [she] deals with older people [she] gets them to give [her] the information." Wills explained that Juanita appeared competent and appeared to know what she wanted to have done in regard to the disposition of her property. Further, after the will and the deed had been drafted, Juanita drove herself to Huntsville to execute those instruments. The burden is on the party asserting the attorney-client privilege to show that the presence of a third party did not destroy the privilege. Exparte DCH Reg'l, Med. Ctr., 683 So.2d at 412. The record demonstrates that the evidence regarding Juanita's mental and physieal capacities was in conflict. Therefore, the trial court was within its discretion in concluding that Hamrick was an unnecessary third party at the meeting between Juanita and Wills.
Further, we may affirm the judgment of the trial court if it is right for any reason, and there is an alternative ground on which the trial court could have allowed Wills to testify.Vesta Fire Ins. Corp. v. Milam Co. Constr.,Inc., 901 So.2d 84, 104 (Ala. 2004) ("[A]n appellate court [may] affirm a summary judgment on the basis of a law or legal principle not invoked by the moving party or the trial court. . . ."). Wills's testimony on direct examination was limited to the facts that Juanita signed the deed voluntarily, that there was no trickery or deceit used to obtain her signature, and that Juanita appeared coherent and able to understand the contents and the effect of the instrument. Hamrick correctly points out that, under Rule 502(d)(4), Ala. R. Evid., there is no privilege "[a]s to a communication relevant to an issue concerning the intention or competence of a client executing an attested document to which the attorney is an attesting witness, or concerning the execution or attestation of such a document." Wills was the attesting witness to the deed, and she could thus "divulge information received in the attorney's capacity as an attesting witness." Advisory Committee's Note to Rule 502, Ala. R. Evid. Wills's testimony on direct examination was largely limited to information regarding Juanita's intentions and information *Page 17 
that Wills had gained in her capacity as the attesting witness, and it did not contain privileged information.
It was only in response to the cross-examination by the Lynches that Wills produced information regarding the representation that could be regarded as learned in her capacity as an attorney. Further, although the Lynches now argue that the trial court erred in allowing Wills to testify regarding private conversations between Wills and Juanita, it was the Lynches, not Hamrick, who elicited such testimony regarding these private conversations. The Lynches asked Wills to read the notes she took at each of her meetings with Juanita. The attorney representing Juanita in this action asked Wills: "Since [the first consultation] was a thirty-minute meeting, why don't you just shortly, briefly, go over your notes for us. Why don't you just read from them." The Lynches also asked Wills to read her notes from the private telephone call Wills made to Juanita after the first meeting, as well as her notes made after the second meeting. According to the Lynches, each of these consultations contained privileged communications.
Further, the Lynches asked Wills about her conclusions regarding Juanita's competency and how she came to those conclusions. The Lynches asked Wills: "[W]hat kind of questions did you ask Mrs. Lynch? . . . Did you ever ask her about her memory?" The Lynches then questioned Wills about how she concluded that Juanita was of "sound mind." They also asked Wills: "Ms. Wills, was there anything to suggest that Mrs. Lynch was either under duress or that she was somehow coerced into making this deed or meeting with you?" The Lynches thus elicited the same information regarding Juanita's competency with greater detail than had Hamrick in her direct examination of Wills.
By inquiring into the substance of what were otherwise confidential and privileged communications between Juanita and Wills, Juanita waived the attorney-client privilege.See Rule 510, Ala. R. Evid. ("A person upon whom these rules confer a privilege against disclosure waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter."); Ex parte State Farm Fire Cos.Co., 794 So.2d 368, 374 (Ala. 2001) ("`The principle that the attorney-client privilege is implicitly waived when a party puts an attorney-client communication at issue in a case is well accepted in American jurisprudence.'" (quotingMortgage Guar. Title Co. v. Cunha, 745 A.2d 156,159 (R.I. 2000))); Ex parte Great American Surplus LinesIns. Co., 540 So.2d at 1359 (holding that the partial disclosure of a privileged communication waives the attorney-client privilege); Free v. State,455 So.2d 137, 142 (Ala.Crim.App. 1984), abrogated on other groundsby McKinney v. State, 511 So.2d 220 (Ala. 1987) ("Since the appellant's counsel initiated the inquiry into the appellant's sanity, appellant waived any privilege of confidentiality he may otherwise have had.").
Finally, the Lynches, in separate instances, expressly waived the protections of the attorney-client privilege. When she was asked to present the "Chronology of Events," Wills's counsel objected, and the Lynches stated: "We waive her privilege at this point." Later, the Lynches asked Wills about a communication Wills had had with Juanita after she was contacted by the attorney then representing Juanita. Again, Wills asserted the attorney-client privilege, and the Lynches said: "We're still waiving."
For these reasons, it does not appear that the trial court exceeded its discretion in allowing Wills to testify regarding her representation of Juanita. *Page 18 
 Conclusion
The Lynches have failed to establish that the protections of the attorney-client privilege apply in this case. The trial court acted within its discretion when it allowed Wills to testify regarding Juanita's intentions and her capacity to execute the warranty deed in Hamrick's favor. Further, by their cross-examination of Wills regarding the confidential communications she had had with Juanita, the Lynches waived any error the trial court may have otherwise committed in permitting Wills to testify.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] Section 8-9-12, Ala. Code 1975, provides: "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees, and mortgagees without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."
[2] Counsel filed a notice of appearance to represent Wills in regard to the invocation of the attorney-client privilege.