These appeals result from a judgment by the trial court in favor of Charlie B. Williams, Jr., as executor of the estate of Charlotte W. Williams, deceased, against Harry W. Williams on two promissory notes executed on May 10, 1983, and June 21, 1983, and against Harry W. Williams and Patricia L. Williams on a promissory note executed on March 6, 1973. The two notes executed by Harry W. Williams were due on May 10, 1984, and June 21, 1984, respectively, and the note executed by Harry W. Williams and Patricia L. Williams was payable in 116 consecutive monthly installments beginning April 10, 1973. The judgment was for the amount of the debt, interest, and attorney fees in each instance. We affirm.
In March 1973, Harry Williams and his wife, Patricia Williams, appellants herein, borrowed $31,746.55 from Mr. Williams's mother, Charlotte W. Williams. They executed a promissory note payable to Charlotte Williams in 116 monthly installments beginning April 10, 1973. On June 22, 1982, Charlotte Williams executed a general power of attorney to Harry Williams. On August 2, 1982, Mrs. Williams revoked the power of attorney, in the presence of her lawyer, but that revocation was never communicated to Harry Williams. Then, in May 1983, Harry Williams executed another promissory note to his mother in the amount of $10,000 plus interest. In June 1983, he executed to his mother another note in the amount of $3,000 plus interest.
In December 1982, Harry Williams began executing documents which purported to forgive the notes that he had made payable to his mother. All of these documents contained a certification by Mr. Williams that the power of attorney under which he was forgiving these debts was in full force and effect on the date exercised. On December 20, 1982, he purported to forgive $20,000 of the $31,746.55 that he owed to his mother. On January 31, 1983, he "forgave" the balance of this note. On December 24, 1983, he "forgave" the $3,000 note that he had made payable to his mother. Finally, on January 5, 1984, he "forgave" the remaining $10,000 that he owed to his mother. The justification that he gave for the cancellation of these notes was the power of attorney that he purported to act under.
Later in 1984, Mrs. Williams died, and another of her sons, Charlie B. Williams, Jr., was appointed executor of her estate by the Probate Court of Covington County, Alabama. Charlie B. Williams, Jr., as executor of his mother's estate, filed suit against Harry Williams and Patricia Williams on February 19, 1985, for the balance due on the notes, together with interest and attorney fees.
We address first appellant's contention that the statute of limitations had run on the note executed by Harry and Patricia on March 6, 1973. Appellant argues that the evidence adduced at the trial clearly establishes that no payment on the note was made by Harry W. Williams for a period of ten years following the execution of the note and, therefore, he argues that the suit on it was barred under the provisions of § 6-2-33, Code of Alabama 1975. This note was payable in monthly installments for 116 months and contained an acceleration clause, which was exercisable at the option of the payee. Alabama cases have historically considered the optional acceleration clause to be for the benefit of the creditor, and have held that the debt does not mature for the purpose of the statute of limitations until the last installment is due and unpaid. Williamson v.Shoults, 423 So.2d 874 (Ala.Civ.App. 1982), citing Summers v.Wright, 231 Ala. 372, 165 So. 87 (1935). During the trial, and in the memorandum brief filed in support of the motion for new trial, the defendants argued that the case of Ex ParteFletcher, *Page 483 429 So.2d 1041 (Ala. 1982), overrules Williamson and Summers.
We disagree. The issue in the Fletcher case was whether a counterclaim would relate back to the time the plaintiff's claim arose, and Fletcher does not change the rule that the statute of limitations does not begin to run against the payee until the last installment is due and unpaid.
Appellant Harry Williams further contends that, because the revocation of the power of attorney granted to him by his mother was never communicated to him, his actions in forgiving these debts under the power were valid. He cites the case ofCooper v. Cooper, 206 Ala. 519, 91 So. 82 (1921), for the proposition that the revocation of a power of attorney is ineffective unless the agent receives actual notice of the revocation. In the Cooper case, the power granted the agent was the power to convey certain lands. The holding of Cooper was that:
 "As affecting the rights of third persons, the acts of a former agent within the scope of his original authority will, notwithstanding its revocation, continue to bind the former principal to those third parties to whom the agent has been thus accredited, and who deal with him in good faith in justifiable reliance on his former authority, until due notice of its revocation has been given in the manner required by the circumstances of the case."
206 Ala. at 521-522, 91 So. at 84.
In any event, it is the agent's duty, in all transactions concerning or affecting the subject of the agency, to act with due regard to the interest of the principal with the utmost good faith and loyalty. The relationship is a fiduciary one demanding trust and confidence. See Lauderdale v. Peace BaptistChurch, 246 Ala. 178, 19 So.2d 538 (1944). A reading of the record discloses that the trial judge carefully examined defendant Harry W. Williams concerning his act of "forgiving" the indebtedness under the power granted him as his mother's agent. This matter was clearly for the trial judge to determine:
 "In those cases where the trial court makes findings of fact after the evidence has been presented ore tenus and the trial court has had the advantage of observing the demeanor of the witnesses, a presumption of correctness attends the findings of the trial court and those findings will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. Chaffin v. Hall, 439 So.2d 67 (Ala. 1983); Securitronics of America v. Bruno's, Inc., 414 So.2d 950 (Ala. 1982)."
Allstate Ins. Co. v. Shirah, 466 So.2d 940, 943 (Ala. 1985).
Appellants advance several arguments in regard to the evidence considered by the trial judge throughout the trial of this case. Appellants contend that the judge erred in his interpretation of the "Dead Man's Statute" in not considering facts tending to prove a valuable consideration for the power of attorney; in not receiving into evidence a letter written by plaintiff to defendant Harry and another brother concerning advancements to all the children; and in not receiving into evidence financial statements made by the decedent, Charlotte Williams.
The so-called "Dead Man's Statute," found at Code 1975, §12-21-163, has been construed to prohibit testimony where four facts co-exist: (1) the testimony concerns a transaction with, or a statement of, a person now deceased; (2) the estate of the deceased will be affected by the outcome of the suit; (3) the witness has a pecuniary interest in the suit; and (4) the interest of the witness is adverse to the decedent or his estate. Lett v. Watts, 463 So.2d 138 (Ala. 1984); Lavett v.Lavett, 414 So.2d 907 (Ala. 1982). Since the present case involves a suit filed by the executor of the estate of Charlotte W. Williams to recover on promissory notes naming Charlotte W. Williams as payee, the outcome of the suit will affect that estate. Harry Williams, as maker of the promissory notes, has a pecuniary interest in the suit, and his interest is adverse to that of the estate. Thus, the *Page 484 
"Dead Man's Statute" is applicable to prevent testimony by Harry Williams concerning transactions with or statements of Charlotte W. Williams. The purpose of the statute "is to prevent testimony by a living witness having a pecuniary interest in an estate as to transactions with or statements made by persons who are no longer alive to contradict such testimony." Lett v. Watts, supra, at 142. This purpose was served by the trial court's proper exclusion of Harry Williams's testimony.
From our review of the record, we are unable to say that the trial court erred in refusing to receive into evidence the letter written by Charlie B. Williams or the financial statements made by Charlotte Williams. As this Court recognized in Ryan v. Acuff, 435 So.2d 1244, 1250 (Ala. 1983), "[q]uestions of materiality, relevancy, and remoteness rest largely with the trial judge, and his rulings must not be disturbed unless his discretion has been grossly abused," citing Dorcal, Inc. v. Xerox Corp., 398 So.2d 665 (Ala. 1981);Costarides v. Miller, 374 So.2d 1335 (Ala. 1979). In this case, we do not think the trial judge abused that discretion. Nor can we say that the judge's findings are plainly and palpably erroneous and manifestly unjust. Therefore, we must affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.