LOBRANO, Judge.
Defendants, Dr. Gustavo Carlomagno (Dr. Carlomagno) and Dr. Robert Berthier (Dr. Berthier), appeal that portion of the trial court’s judgment which holds them personally liable on a promissory note. Plaintiffs, Frank A. Ashby (Ashby) and Daniel J. Mack (Mack), appeal that portion of the judgment which released defendants from liability for the note’s increased interest represented by an allonge.
ISSUE:
This court must determine whether defendants’ agents acted within the scope of their authority conferred by a mandate in signing a promissory note and a subsequent allonge to the note, on behalf of defendants.[1]
FACTS:
This is a suit to recover under a $450,-000.00 promissory note (the note). The note was executed as part of a $1.8 million real estate transaction. The interest rate was subsequently increased through an al-longe. Defendants were represented by agents in all transactions involving the note, and the allonge. They claim that because their agents exceeded the scope of authority granted, they are not personally liable under either.
In early 1979, the defendants, Dr. Carlo-magno and Dr. Berthier, accepted an invitation from a group of investors (the investors) to participate in the purchase of a 104 unit apartment complex. The complex, known as Scotsdale Manor Apartments, was owned by the plaintiffs, Frank Ashby (Ashby) and Daniel Mack (Mack).
On February 5,1979 the investors signed an agreement to purchase the apartments at a price of $1.8 million; Drs. Carlomagno and Berthier subsequently replaced an original signee of the sales agreement who decided not to participate. The agreement to purchase provided that the sale was to be financed with a first mortgage loan of $1.2 million, and a $450,000.00 loan from the plaintiff-sellers secured by a second mortgage.
The organizer of the investment group, Salvatore Franzella (Franzella), represented the individual members of the investment group, including the defendants, throughout negotiations with plaintiffs. On July 7, 1979, defendants signed identical powers of attorney appointing Franzella their agent for purposes of purchasing the apartment complex.
On August 27, 1979, the investors formed a limited partnership entitled Scots-dale, Ltd. for the purpose of acquiring and managing the Scotsdale apartment. The defendants were limited partners in Scots-dale, Ltd.
The closing took place on August 31, 1979. Franzella appeared as agent for the individual members of the investment group. The $1.2 million first mortgage was provided by the Federal Home Loan Mortgage Corporation (FHLMC) through First Homestead Savings and Loan Association (First Homestead). The FHLMC provisionally approved the loan conditioned on the proviso that there be no second mortgage on the property. In order to accommodate the FHLMC, plaintiffs agreed to loan purchasers the additional $450,000.00 on an unsecured basis. On behalf of defendants, Franzella, as their agent, executed a $450,000.00 promissory note in favor of plaintiffs. The note contained an acceleration clause providing that it would become due on demand upon any future sale of the apartments by the purchasers. The members of the investment group, including defendants, were also required by First Homestead to personally sign a guarantee of the $1.2 million loan. A copy of this guaranty, introduced into evidence, is undated and is subject to vigorous objection by the defendants.
By 1984, the Scotsdale investment had proven unprofitable, and the investment *670 group decided to sell. The investors contacted Ashby concerning the note’s “due on sale” acceleration clause. Ashby agreed to allow a prospective purchaser to assume additional liability on the note, but refused to relieve members of the investment group of personal liability under the note.
On February 8, 1984, an agreement to sell the Scotsdale Apartments was reached between the investors and Michael J. Guil-lot (Guillot). Plaintiffs agreed to the sale provided: (a) the interest rate on the note would be increased from 8% to 11%; (b) the new purchaser would become additionally liable under the note; and (c) the original makers of the note would remain liable and assume the increased interest rate. At least two meetings were held in an attempt to reach accord between plaintiffs and the investment group as to future obligations under the note. Defendants did not attend these meetings.
The closing was delayed by discussions on continued liability under the note, and was eventually held on April 30 and May 1, 1984. Defendants chose not to attend, appointing Dr. Joseph A. Serio (Serio), a member of the investment group, their agent through identical written powers of attorney. During the course of the closing, an allonge was executed which raised the interest on the note to 11%, as required by the plaintiffs as a condition of the sale. Dr. Serio signed the allonge as agent for the defendants.
Several months after acquiring the apartments, Guillot became delinquent on the note. On October 31, 1985, Ashby sent a letter to each member of the original investment group, including defendants, demanding payment on the note. Following several timely payments, the note again went into default in January 1986. On February 27, 1986, Ashby filed this suit to collect the balance of the note.
On May 1, 1989, following a three day trial, the trial court rendered judgment in favor of plaintiffs and against defendants, in solido, for the balance due under the note ($222,588.44 plus interest at 8%), plus attorney’s fees. The court did not hold defendants liable for the increased interest represented by the allonge.
Defendants filed this devolutive appeal claiming the trial court erred in finding them personally liable on the note. Plaintiffs answered, asserting that defendants should also be held liable for the increased interest rate represented by the allonge.
Although defendants assert numerous trial errors, the thrust of this appeal centers on the authority granted to defendants’ agents pursuant to the powers of attorney in favor of Franzella and Dr. Ser-io.
LIABILITY UNDER THE NOTE:
The trial court held that the defendants authorized their agent, Franzella, to bind them on the note. We agree.
The note is clear that defendants’ liability is predicated on the authority granted their agent, Franzella. Because defendants challenge that authority, we must determine the true meaning and intent of the powers of attorney.
A power of attorney is a contract. La. C.C. Arts. 2985, 2988. “[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La.C.C. Art. 2046.
The mandates executed by Drs. Carlo-magno and Berthier in favor of Franzella are identical, and contain the following grant of authority concerning promissory notes:
“To make, execute and deliver in Principal’s name a promissory note in the amount of the credit portion of the purchase price or the amount of the loan, said note to be payable at such maturity and at such rate of interest and on such terms and conditions as agent shall deem proper. Agent shall have full discretion as to the amount of any note to be signed on behalf of principal, all for such price and on such terms as the hereinabove agent, in said agent’s sole discretion, shall determine fit and proper ...” (emphasis added).
We find the above language clear and explicit. Franzella had the authority to *671 “execute and deliver, in principal’s name,” a note representing the credit portion of the sale. We find that the documents clearly authorized Franzella to bind defendants on the note. The language of the above provision is very expansive. Words such as “full discretion” and “sole discretion” are indicative of the most unbounded sort of mandate. Phrases such as “shall deem proper” and “shall determine fit and proper” are only slightly less indicative of an expansive grant of authority. In addition, there is no language in the above paragraph or anywhere else in the document which attempts, in any way, to limit Franzella’s authority. The intent of the parties is clear, and as the wording of the contract does not produce an absurd result, we need not search outside the document to find an alternate interpretation. La.C.C. Art. 2046.
Because our holding is based on the clear language of the instruments themselves, it is not necessary to address plaintiffs’ argument that defendants should be bound by the actions of their agent under principles of ratification, apparent authority, estop-pel, and waiver.
Defendants argue, however, that FHLMC’s prohibition on secondary financing, which was received after defendants executed Franzella’s powers of attorney, imposed on plaintiffs a duty to inquire whether the previously executed powers of attorney were sufficient to bind defendants on an unsecured loan. As the trial court correctly points out, the security of a second mortgage protects the interests of the creditor. It is a fundamental principle of law that a debtor is liable for the full amount of his debt obligation, whether the debt is secured or not. Unsecured debt merely places a creditor in an inferior status vis-a-vis a debtor’s other creditors, and in no way affects the creditor’s right to collection from the debtor. Defendants’ argument might be persuasive if, for example, Franzella had been granted authority only to bind the defendants on an in rem mortgage. In such a case, defendants could only be bound up to the value of the underlying real estate. However, here, the defendants were not prejudiced in any way when plaintiffs agreed to waive the necessity of a second mortgage.
Defendants also argue that because the sale was executed in favor of a limited partnership, as opposed to the individual members of the investment group, the powers of attorney should have reflected this change. This argument fails for two reasons. First, if the mandates were insufficient to authorize purchase by the partnership through the actions of agent Franzel-la, then the entire transaction would be invalid. As defendants have never challenged the validity of the underlying transaction, they may not now rely on limited partner status to eliminate at will unfavorable personal obligations incurred therein. Second, as the trial court recognized, to allow defendants out of a personal obligation simply because the investors decided to form a limited partnership would be to elevate form over substance. The substance of the transaction was the purchase of the apartments by defendants with secondary financing by the plaintiffs. We will not release defendants from their personal liability simply because the apartments were formally sold to the Scotsdale limited partnership, of which defendants were partners.
In addition, defendants urge that the trial court committed the following evidentia-ry errors: (1) consideration of parol evidence in determining the extent of Franzel-la’s written Power of Attorney; (2) interrogation of a witness with leading questions; and (3) admission of a duplicate copy of the FHLMC guaranty document. Because we hold that defendants’ liability is predicated entirely on the plain language of the documents, it is unnecessary to address these arguments. Assuming arguendo that the trial judge erred in each instance, the error was harmless. Consideration of each complaint is not germane to our holding.
LIABILITY UNDER THE ALLONGE:
The trial court held that defendants were not bound by the increased interest rate represented by the allonge. We disagree. We find the trial court erred in its interpretation of the power of attorney *672 granted in favor of Dr. Serio by the defendants.
The mandates executed by Drs. Carlo-magno and Berthier in favor of Dr. Serio in connection with the sale to Guillot were identical, and contain the following grant of authority:
“Appearer further declare [sic] that he does hereby authorize his said agent and attorney-in-fact to incorporate in said instrument such terms, conditions and agreements as said agent shall deem meet and proper in his own sole and uncontrolled discretion, to sign all papers, documents and acts necessary to convey his said interest ... and to do any and all things the said agent, in his sole and uncontrolled discretion, deems necessary or proper in connection therewith.” (emphasis added).
The plain language of this document grants Dr. Serio the authority to do all things necessary to consummate the sale of the apartment complex. Like Franzella’s power of attorney, this document contains the expansive “sole and uncontrolled discretion” language. The language “sign all papers, documents and acts necessary in order to convey” and “do any and all things ... necessary” are particularly damaging to defendant’s position, since increased interest on the note was required by plaintiffs before they agreed to a sale. And like the Franzella document, this power of attorney contains no language attempting to proscribe the expansive authority granted. Based solely on its plain wording we are satisfied that Dr. Serio was authorized to bind defendants on the allonge.
The trial court’s interpretation is premised on a finding that the document was executed before the allonge was conceived, and therefore defendants could not have authorized the increased interest rate. We are convinced that this reasoning is incorrect.
Exhibit B to the February 8, 1984 Agreement to Sell to Guillot contains the following language: “Purchasers shall take title to a second mortgage securing a Promissory Note (existing note) with current balance of $343,250.12 ... including interest of llf° per annum ...” (emphasis added). This particular provision is initialed “G.F.C.” and “R.R.B.”. The initials conform precisely to the initials which appear next to the personal signatures of Drs. Carlomagno and Berthier on the first page of the document. In our opinion this evidences the fact that both defendants knew or should have known that the subsequent sale of the Scotsdale apartments would necessitate an increase in the interest rate from the existing 8% to 11%.
Since they executed the power of attorney in favor of Dr. Serio approximately two months later (April 17, 1984), they were aware at that time, that among those things necessary to complete the sale, Dr. Serio would have to bind them for the increase in interest. To conclude otherwise would necessitate a strained interpretation of the authority granted, i.e. that Dr. Serio could do everything necessary to complete the sale, except the sellers’ requirement of increased interest. In our opinion this would be an illogical conclusion.
Accordingly, for the reasons assigned, that portion of the trial court’s judgment holding Drs. Berthier and Carlomagno personally liable on the promissory note in favor of Ashby and Mack is affirmed. That portion of the judgment which relieves Drs. Berthier and Carlomagno from the increased interest rate is reversed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

. This matter was originally argued and submitted to a panel consisting of JJ. Garrison, Lobrano and Becker. Due to the death of J. Becker and the illness of J. Garrison, JJ. Gulotta and Byrnes were substituted. The parties were given the opportunity to re-argue before the new panel but declined to do so. The matter was then submitted.