(115 P.3d 157)
No. 93,301

GOLDA R. MAENHOUDT, *et al., Appellants,* v. STANLEY BANK, *et al., Appellees.*

Opinion filed July 15, 2005.

*Phillip H. Schuley,* of Overland Park, for appellants.

*R. Scott Beeler* and *Tammy M. Somogye,* of Lathrop & Gage L.C., of Overland Park, for appellees.

Before GREEN, P.J., MARQUARDT and MCANANY, JJ.

MARQUARDT, J.: Golda Maenhoudt, through Frances Rose, attorney-in-fact, and Frances Rose, individually, appeal the trial court's grant of summary judgment to Stanley Bank (Bank) and Joe Jackson. We reverse in part, dismiss in part, and remand with directions.

Rose is Maenhoudt's niece. In June 2002, Maenhoudt, who was 90 years old, had a stroke. She was treated at a hospital and discharged to a nursing home.

Maenhoudt executed a trust agreement naming Rose as trustee. The trust agreement allowed Rose to handle Maenhoudt's financial affairs, which included two certificates of deposit (CDs) in the amount of $40,000 each at Stanley Bank (Bank) that were to be transferred into the trust, and "all monies" located in Maenhoudt's checking account with the Bank. The trust agreement was notarized in the "State of KANSAS County of KS" by Dettie L. Davis.

A durable power of attorney (POA) dated April 26, 2003, was signed by Maenhoudt naming Rose as attorney-in-fact; however, the POA was notarized on May 2, 2003, in the "STATE OF KANSAS COUNTY OF JOHNSON" by Dettie L. Davis. The durable POA gives Rose very broad powers to handle Maenhoudt's assets. See K.S.A. 58-610 *et seq.*

On May 5, 2003, Angela Holland, an assistant cashier at the Bank, was told that Rose and her attorney, Phillip Schuley, had come to the Bank with a durable POA. Rose and Schuley left the Bank after the employee informed them that the Bank did not accept POAs.

Later that afternoon, Rose and Schuley returned to the Bank and presented the durable POA and said they wanted to "take care of" some CDs. Holland told them that it was the Bank's policy not to recognize a POA, and she refused to make the requested transactions. Holland described Schuley and Rose as "upset" because she would not comply with their request.

Schuley and Rose returned to the Bank on another day without an appointment to speak to Jackson, the Bank's president. Holland told Jackson that she had already informed Schuley and Rose that the Bank did not recognize a POA. After being presented with the durable POA and the trust agreement, Jackson said that he would "check into" the matter.

In an attempt to investigate the legitimacy of Rose's request, Jackson asked Holland if she would visit with Maenhoudt at the nursing home. Holland was told that the nursing home would transport Maenhoudt to the Bank. Jackson saw this as an opportunity to speak directly with Maenhoudt and determine the circumstances surrounding the request to transfer funds into the trust. Schuley and Rose were present at this meeting.

The CDs were purchased on May 23, 1994, and May 25, 1994, and are "payment on date due" notes. When the request to cash the CDs was made, the Bank was not required to pay the full amount on any day other than the due date, or within 10 days thereafter, otherwise a penalty would be imposed. When Maenhoudt was brought to the Bank, Holland testified that Schuley prevented her from explaining this to Maenhoudt, saying, "She does not need to know any of that, she just needs to sign." Holland did not believe that Maenhoudt had the capacity to make this type of financial decision.

Maenhoudt eventually signed both CDs, and as she was endorsing one document, she stopped and paused for approximately 20 seconds. Holland perceived this as uncertainty, and it caused her more concern. Rose wrote a check to herself personally, not in her capacity as trustee, to close Maenhoudt's checking account. Holland left her desk and relayed her concern to another employee. Eventually, Holland spoke with Jackson, telling him that she did not believe Maenhoudt understood what she was doing.

Holland testified that Schuley interrupted them in Jackson's office, telling them that he needed to get Maenhoudt back to the nursing home for lunch. Jackson was unable to obtain confirmation from Maenhoudt of her wishes, so he decided the Bank needed legal counsel.

Jackson attempted to speak privately with Maenhoudt; however, Jackson described Schuley and Rose as "resisting" his efforts. Schuley put his hand in between Jackson and Maenhoudt and physically shoved Jackson. Holland described it as a "confrontation" because Schuley did not want Jackson to speak with Maenhoudt.

After approximately 30 seconds of Jackson's attempts to speak with Maenhoudt, Schuley rolled Maenhoudt's wheelchair out of the Bank. The CDs and check written to Rose were never presented for payment. Holland was so disturbed by the entire matter that she notified Kansas Social and Rehabilitation Services (SRS) of a potential case of fiduciary abuse. SRS determined that the report was unconfirmed.

In response to the Bank's actions, Rose filed a petition claiming that the trust was damaged by the Bank's willful and wanton refusal to transfer Maenhoudt's assets to the trust. In February 2004, Rose filed a motion for summary judgment, arguing that the Kansas Supreme Court's opinion in *Bank IV Olathe v. Capitol Fed'l Savings & Loan Ass'n*, 250 Kan. 541, 828 P.2d 355 (1992), essentially required the Bank to immediately accept the durable POA.

The Bank responded by filing its own motion for summary judgment, claiming that Kansas law and *Bank IV* do not require a state banking institution to recognize either a durable POA or a trust agreement.

The trial court heard arguments from the parties and concluded that *Bank IV* "does not establish a common law of our state, that a bank is obligated to comply with a request made under a power of attorney." The trial court also found that the CDs were presented at a time when they were not due and thus, under the CDs' specific terms, they were not payable on the date they were presented for payment. The trial court also ruled that the Bank did not dishonor the check because Rose never presented the personal check for payment. The trial court granted the Bank's motion for summary judgment. Rose's motion for summary judgment was denied. Rose timely appeals.

Rose continues to assert that *Bank IV* requires a financial institution to recognize a durable POA and the Bank was limited to

comparing Maenhoudt's signature on the POA with the signature the Bank had on file.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

When Maenhoudt was at the Bank on May 9, 2003, the Bank officials came to the conclusion that she did not understand the transactions that were being attempted. *Bank IV* holds that the incapacity of the principal at the time the power of attorney is presented is not a factor the financial institution may use in deciding whether to honor the request by an attorney-in-fact for withdrawal of funds. The only time relevant to the principal's capacity is the time when the power of attorney was executed. 250 Kan. at 544. Maenhoudt's capacity when Rose and Schuley went to the Bank is immaterial. The question is whether Maenhoudt was competent on the date she executed the POA. Affidavits attached to Rose's motion for summary judgment state that Maenhoudt was competent when she executed the POA on May 2, 2003. No evidence to the contrary was presented.

The POA is a contract between Maenhoudt and Rose. A third person is any legal entity that "acts on a request from, contracts with, relies on or otherwise deals with an attorney in fact pursuant to authority granted by a principal in a power of attorney." K.S.A. 2004 Supp. 58-651(k). K.S.A. 2004 Supp. 58-658(a) states that a third person, who is acting in good faith, without liability to the

principal or the principal's successors in interest, *may* rely and act on any POA executed by the principal.

*Bank IV* does not hold that a financial institution must honor every durable POA. If a banking institution is put on notice that the fiduciary is misappropriating the principal's funds, it can refuse to honor the POA. Under those circumstances, by honoring the POA, the banking institution could be considered an accessory and be held liable for the fiduciary's actions. 250 Kan. at 550.

The Bank may rely on the POA as long as there are no circumstances that would indicate a potential of misappropriation of the principal's funds. An unqualified refusal to honor the POA is contrary to Kansas law; however, when presented with a durable POA or trust agreement, the Bank has a duty to: (1) compare the signature on the POA with the customer's signature on file; (2) obtain proper identification from the person seeking withdrawal as the person designated as attorney in fact; and (3) determine whether the requested transaction was within the scope of the durable POA. *Bank IV*, 250 Kan. at 546. In addition, K.S.A. 2004 Supp. 58-658(d) allows the Bank to require indemnification from the fiduciary.

The trial court decided this case on summary judgment. Due to the trial court upholding the Bank's unqualified refusal to honor the POA, this case must be reversed and remanded because there are questions of fact to be decided regarding the validity of the POA, whether the Bank compared the signatures on the POA and trust with the signature they had on file, and whether the Bank had actual or constructive knowledge that a fraud was being perpetrated by Rose.

Rose's motion for summary judgment claimed that the Bank was obligated to honor the POA and, because it did not, the Bank caused Maenhoudt and Rose to incur attorney fees, deposition costs, and expenses. Rose also claims that Jackson should also be responsible for fees, costs, and expenses.

Rose argues that K.S.A. 2004 Supp. 58a-809 requires the trustee to "take reasonable steps to take control of and protect the trust property." Rose believes this statute, as well as K.S.A. 2004 Supp. 58a-1004, requires that this court award attorney fees and costs of this action.

The assessment of costs and attorney fees is within the sound discretion of the trial court, and its determination will not be reversed on appeal absent a showing of an abuse of discretion. *Fletcher v. Anderson*, 29 Kan. App. 2d 784, 786, 31 P.3d 313 (2001).

We can find no request for attorney fees in the record on appeal. This court cannot review matters that were not brought to the trial court's attention. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). Thus, this issue is dismissed.

Reversed in part, dismissed in part, and remanded with directions consistent with this opinion.