SHAW, Justice.
In case no. 107Í189, Fletcher Mitchell Smith, as the personal representative of the estate of Jo Everett McLeod (“the wife”), deceased, appeals from a judgment against Smith; Smith’s wife, Maria Smith (“Maria”), the wife’s niece; and the wife’s estate in a breach-of-contract action filed by Wachovia Bank, N.A. (“Wachovia”), in its capacity as the personal representative of the estate of William Wynn McLeod (“the husband”), deceased. In case no. 1071239, Wachovia cross-appeals from the trial court’s declaration that certain equitable claims asserted by Wachovia were rendered moot by the judgment in Wachovia’s favor. We reverse and remand in both cases.

Facts and Procedural History

The husband and wife were married in 1957. No children were born to them during their approximately 49-year marriage. The record reflects that despite filing joint tax returns, the husband and wife for the most part kept them finances separate.
The record suggests that the separate financial arrangements of the husband and wife and the terms of the husband’s will, as set out below, were the husband’s response to marital difficulties between the husband and the wife and his attempts to leave the wife an amount equal to or only slightly larger than the wife’s statutory elective share. See § 43-8-70, Ala.Code 1975. The testimony of Katherine N. Barr, an attorney who prepared a will for the husband in 1995, indicated that the husband was “very fearful” of the wife, that he was afraid to file for divorce, and that he took extreme steps to keep the wife unaware of his estate-planning activities. Similarly, Lynn Baxley Ault, the attorney who, purportedly following the wife’s becoming aware of the contents of *1193 the 1995 will, prepared a new will for the husband in 1996, indicated both her concern and the husband’s fear that the wife would contest his will. According to Ault, the husband informed her “that he did not want [the] wife to receive ‘one penny more’ than the elective share.” Ault further noted that the marital relationship between the husband and the wife appeared to be “poor” and obviously one of “mutual distrust” and that the husband “seemed afraid of his wife.” Ault specifically observed during trial that the husband “seemed to be ... cowed by [the wife]” and that “[h]e did not want to confront her.” She further stated that the husband was extremely secretive about his estate plans because, she said, “[she] got the impression he was afraid [the wife] might react to him in a way that would be very unpleasant for him.”
On April 25, 2005, the husband, then elderly and ailing, executed a durable power of attorney naming the wife his attorney-in-fact. Specifically, the power of attorney granted the wife broad powers “to act in, manage, and conduct all [the husband’s affairs] ... for [the husband’s] use and benefit.” (Emphasis added.) According to its terms, the power of attorney became effective “upon the disability, incompetency, or incapacity of the [husband].” It is unclear from the record whether the wife knew that the husband had executed the power of attorney or when she discovered it.
Beginning in late 2006, after the husband was moved into a nursing home following the wife’s cancer diagnosis and ensuing treatment, the wife used the power of attorney to transfer stock certificates previously held solely in the husband’s name into either jointly held accounts or accounts held solely in the wife’s name. The assets transferred by the wife totaled $604,368.50. The wife also consolidated several Wachovia checking accounts, some of which were solely in the husband’s name, and prematurely cashed out an $85,000 certificate of deposit held solely in the husband’s name. According to Maria, the wife’s transfer of the assets into her own name and/or jointly held accounts reflected both the wife’s displeasure that two-thirds of the husband’s estate was to be left to his niece and nephew and a desire that everything be “ ‘equally divided.’ ” There was also testimony indicating that the wife undertook the consolidation of assets to liquidate the assets in order to finance the anticipated future health-care costs of both the husband and the wife. The above-described transactions, which allegedly occurred without the husband’s knowledge, left the husband as the possessor of individually titled assets totaling one dollar and twelve cents.
On February 21, 2007, the wife died at the age of 81 years. The wife’s will, which she executed in 2006, named Smith as the personal representative of her estate. Pursuant to the terms of the wife’s will, her estate was to be divided as follows: 50% to Shannon Everett, a nephew of the wife; 87.5% to Smith and Maria; and 12.5% to Geri and Ricki Price, the wife’s grandnephew and his wife.[1]
Following the wife’s death, Julia Roth, the conservator for Jefferson County, was appointed conservator of the husband’s estate. Although Roth discovered the transfers made by the wife pursuant to the power of attorney, disclosed them to the husband’s heirs, and reportedly considered *1194 filing a declaratory-judgment action seeking a determination as to the propriety of the transfers, no legal action was taken before the husband’s death on June 27, 2007. Roth was, however, able to recover some of the husband’s assets that had been transferred by the wife.
The husband’s will named Wachovia as the personal representative of his estate. It provided that Elaine Autrey and William Carlisle McLeod, the husband’s niece and nephew, were his sole heirs should the wife predecease him.
On August 20, 2007, Wachovia filed the underlying action against Smith (both in his individual and representative capacities) and Maria. Wachovia’s complaint included claims of abuse of a confidential relationship, undue influence, breach of fiduciary duty, breach of contract, conversion, fraud, money had and received, and conspiracy. In addition to restitution and “exemplary damages,” Wachovia sought an accounting and the imposition of a constructive trust on all transferred assets, which it estimated totaled approximately $1,170,000.
In January 2008, Smith and Maria filed a counterclaim in which they asserted claims of abuse of process and libel, slander, and defamation against Wachovia. Wachovia amended its complaint, omitting the fraud count and reducing its requested damages to $668,779.09. Shannon Everett, the majority beneficiary under the wife’s will, intervened in the action to “unite with the defendants in defending the claims made by [Wachovia]” and in order “[t]o protect [his] interests as ... a beneficiary of [the wife’s] will.”[2]
The trial court severed the counterclaims filed by Smith and Maria, ordering that they would be considered post-judgment should the defendants prevail at trial. The trial court also severed Wacho-via’s equitable and legal claims, indicating that it would rule on the equitable claims following trial on the legal claims. Trial began on February 25, 2008. At the conclusion of Wachovia’s case, and again at the close of all the evidence, Smith, Maria, and Everett jointly moved for a judgment as a matter of law (“JML”) on grounds that Wachovia had failed to present sufficient evidence; the trial court partially granted that motion, dismissing all tort-based claims as having abated upon the husband’s death and dismissing all claims against Smith and Maria individually. However, the remaining breach-of-contract claim was submitted to the jury, which returned a verdict in Wachovia’s favor and awarded the husband’s estate $668,779.09 in damages.
On March 21, 2008, Wachovia submitted legal authority in support of its equitable claims. Smith, in his capacity as personal representative of the wife’s estate, filed a postjudgment motion for a JML or, in the alternative, for a new trial or a remittitur, again arguing that Wachovia’s breach-of-contract claim had been erroneously submitted to the jury and that the trial court erred in excluding certain items of evidence offered by the defendants at trial. Following a hearing, the trial court denied that motion. In its final order, the trial court also declared Wachovia’s requests for equitable relief moot because, it concluded, the husband’s estate had been fully compensated by the jury’s award on the breach-of-contract claim. It further entered a summary judgment in favor of Wachovia as to the counterclaims asserted by Smith and Maria. The trial court entered an amended final judgment on April 18, 2008, clarifying that the judgment was *1195 entered solely against the wife’s estate and not against either Smith or Maria individually. Smith appeals the judgment in favor of Wachovia on the breach-of-contract claim (case no. 1071189);[3] Wachovia cross-appeals from that part of the judgment holding that its equitable claims are moot (case no. 1071239).

Standard of Review

‘“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the
trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’
“Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).”
Southland Bank v. A & A Drywall Supply Co., 21 So.3d 1196, 1202-03 (Ala.2008).

Discussion

On appeal, Smith argues that the trial court erred in denying the motions for a JML and/or a new trial.[4] Specifically, Smith contends that because Wachovia failed to prove that the power of attorney executed by the husband in favor of the wife was actually a contract, the breach-of-contract claim should not have been submitted to the jury. See Reynolds Metals Co. v. Hill, 825 So.2d 100, 105-06 (Ala.2002) (noting that the existence of “a valid contract binding the parties” is an element of a breach-of-contract claim under Alabama law). Thus, he concludes, “[a]ny claim for ‘breach’ of the power of attorney should have been classified as a tort claim for ‘breach of fiduciary duty,’ and pursuant to the Alabama Code, any such tort claim(s) expired upon [the husband’s] death.” (Smith’s brief, at p. 16.)
Alabama caselaw has historically viewed the execution of a power of attorney as creating an agency relationship.
“ ‘A power of attorney is defined as “[a]n instrument in writing whereby one person, as principal, appoints another as his agent and confers authority to perform certain specified acts or kinds of acts on behalf of [a] principal. An instrument authorizing another to act as one’s agent.... The agent is attorney in fact....” Black’s Law *1196 Dictionary 1171 (6th ed.1990). When one accepts the agency, she implicitly covenants to use the powers conferred upon her for the sole benefit of the party conferring such power, consistent with the purposes of the agency relationship. See, Dudley v. Colonial Lumber Co., 223 Ala. 533, 137 So. 429 (1931). Therefore, when one accepts the power of attorney, she impliedly covenants to use the powers bestowed upon her for the sole benefit of the one conferring that power on her, consistent with the purposes of the agency relationship represented by the power of attorney. Powers of attorney will be strictly construed, restricting the powers to those expressly granted and those incidental powers that are necessary to effectuate the expressed powers. Hall v. Cosby, 288 Ala. 191, 258 So.2d 897 (1972). The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing. See, Williams v. Williams, 497 So.2d 481 (Ala.[1986]); Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538 (1944).
“ ‘ “An agent sustains a position of trust toward his principal and in all transactions affecting the subject of the agency, the law dictates that he must act in the utmost good faith and must make known to his principal each and all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.
“ ‘ “The law sedulously regards this principle and acts of an agent which tend to violate this fiduciary obligation are prima facie voidable ... and are considered, in law, as ‘frauds upon confidence bestowed.’ ”
“ ‘[Myers] v. Ellison, 249 Ala. 367, 369, 31 So.2d 353, 355 (1947). (Citations omitted.) (Emphasis added.) An agent is not permitted to occupy a position that would allow her to profit as a result of that agency relationship. Lauderdale v. Peace Baptist Church of Birmingham, supra. In Lesnick v. Lesnick, 577 So.2d 856, 859 (Ala.1991), this Court held that a guardian’s commingling of the funds of her ward with those of her own and those owned jointly, thereby making it impossible to determine whose funds were used for what purposes, was sufficient cause for the probate court to include jointly owned property in an accounting, because “[the] joint tenancy principle of law does not defeat a guardian’s obligations to act in her fiduciary capacity as custodian of the ward’s estate.” The agent, if otherwise competent, may testify as a witness as to the nature and extent of her authority. See, McCarty v. Skelton, 233 Ala. 531, 172 So. 901 (1937).’
“Sevigny v. New South Fed. Savs. & Loan Ass’n, 586 So.2d [884] at 886-87 [ (Ala.1991) ].”
Harrelson v. Harrelson, 7 So.3d 1004, 1009-10 (Ala.Civ.App.2008). See also Barron v. Scroggins, 910 So.2d 780, 786 (Ala.Civ.App.2005); Olanrewaju v. Bankers Ins. Co., 688 So.2d 820, 822 (Ala.Civ.App.1996); Williams v. Williams, 497 So.2d 481, 483 (Ala.1986); 3 Am.Jur.2d Agency § 205 (2009) (“An agent is a fiduciary with respect to the matters within the scope of the agency.”).[5] The parties have provided *1197 no Alabama caselaw holding that executing a power of attorney per se creates a contractual relationship; instead, Alabama caselaw, as indicated above, identifies a power of attorney as creating a fiduciary relationship.[6]
Both parties raise numerous arguments on appeal regarding whether the power of attorney in this case was a contract. Smith argues that the power of attorney was not bargained for or supported by consideration and that under Alabama law powers of attorney have never been held to constitute contracts. On the other hand, Wachovia, citing SouthTrust Bank v. Williams, 775 So.2d 184 (Ala.2000), argues that the power of attorney required only a promise to be exchanged for an act, which is in the nature of a valid unilateral contract.[7] We conclude that the dispositive issue presented on appeal is whether Wa-chovia demonstrated the existence of consideration: that a promise or performance was exchanged by the husband for the performance undertaken by the wife under the power of attorney.
A contract, in its most basic sense, “is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.” Restatement (Second) of Contracts § 1 (1981). In this context, a “promise” is “a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.” Id. § 2(1).
Further, “the formation of a contract requires a bargain in which there is ... a consideration.” Restatement (Second) of Contracts § 17(1). “To constitute consideration, a performance or a return promise must be bargained for,” and “[a] performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.” Restatement (Second) of Con *1198 tracts § 71(1) and (2) (emphasis added). To constitute consideration, the promise on the part of the promisor “must induce the promisee to exchange the promisee’s conduct for the promise.... [T]he offeree must actually or apparently be induced to act by the promise.” John D. Calamari & Joseph M. Perillo, The Law of Contracts § 4.2(c) (4th ed.1998). Further, “[i]t is a well-settled general rule that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract.” Kelsoe v. International Wood Prods., Inc., 588 So.2d 877, 878 (Ala.1991).
In the instant case, Smith contends that Wachovia has not demonstrated the existence of a promise or performance on the part of the husband in exchange for the performance undertaken by the wife.
Our review of the record reflects that, during the hearing on the defendants’ motions for a JML, the following exchange occurred with regard to the breach-of-contract claim:
“THE COURT: All right. Let the record show that the jury has been discharged for the day and that at the conclusion of all the evidence we are here on defendants’ motions for Judgment as a Matter of Law. They were timely filed, both after the plaintiffs case and at the conclusion of all the evidence.
“Let me hear from the plaintiff. What causes of action you claim you have proven and let’s go through the elements of those and show me where there’s substantial evidence of each element of each claim. Otherwise, I’m going to dismiss the claim.
“[Wachovia’s counsel]: All right. Our first cause of action, Your Honor, is breach of contract.
“THE COURT: All right. Is a power of attorney a contract?
“[Wachovia’s counsel]: Can be. The answer is can be.
“THE COURT: What’s the consideration for it?
“[Wachovia’s counsel]: Well, [the wife’s] actions along with [the husband’s] creation of that legal relationship through the execution of the power of attorney, that [serves as] consideration necessary to support a contract when it’s a unilateral contract, which it was [Restatement (Second) of Contracts § 71], specifically designates that the creation of a legal relationship can be sufficient consideration to support a contract.
“THE COURT: All right. Let me hear the response to that.
“[Everett’s counsel]: Judge, there is no consideration. A power of attorney has never been held under any caselaw I can find in Alabama to be a contract. It’s missing a lot of elements. [The wife] didn’t even have to be aware of it until she found it in the safe deposit box.... She didn’t receive anything in return for agreeing to be his power of attorney. She received no consideration at all. And without consideration, there is no contract under Alabama law.
“THE COURT: What is the consideration?
“[Wachovia’s counsel]: Well, it’s just that, that she acted through his execution of a power of attorney to serve in that capacity.
“THE COURT: You’re telling me that the consideration is just her agreeing to act as an attorney—
“[Wachovia’s counsel]: And then acting on it. I believe that’s a unilateral contract.
*1199 “THE COURT: Have you got any cases that say that the — what is this Restatement § 71 say[s]?
“[Wachovia’s counsel]: Do we have it cited in our motion ... ?
“[Wachovia’s counsel]: It says that the creation of a legal relationship, such as an agency relationship can serve as a consideration to support a contract. That’s what it says.
“THE COURT: Are there any eases that [say] that the power of attorney is a contract?
“[Wachovia’s counsel]: I’ve not — we haven’t found any cases that say the power of attorney alone is a contract, no. Our argument is it’s a unilateral contract here, and that [the husband] in executing the power of attorney made an offer that she accepted when she began to act as his attorney-in-fact pursuant to that, and that authority that she was provided pursuant to that was consideration. He gave her authority to act on her behalf — on his behalf, excuse me. And that giving of authority is a consideration.
“[Everett’s counsel]: That’s a liability, not a consideration. And the only case that I could find. I’m not sure I addressed it in this, but I address it [in] the summary-judgment motion we filed, that even come close to this situation was a situation where there was a — the Court found that there was a duty required under some document that might be argued to be a contract. The duty itself created a breach of a duty, not a breach of a contract.
“THE COURT: Yeah. And so it’s really a tort instead of a contract.
“[Everett’s counsel]: That’s right.
“[Smiths’ counsel]: Exactly.
“THE COURT: I’m inclined to think that makes more sense.”[8]
Smith reiterates on appeal his claim that the power of attorney was not supported by consideration or a promise or performance on the part of the husband. We agree.
Wachovia has not identified a promise by the husband given “in exchange” for the wife’s performance of her duties under the power of attorney. The explicit terms of the power of attorney directed the wife to conduct the husband’s affairs “for [the husband’s] use and benefit ” only, and there is no other instrument or contract coupled with the power of attorney indicating that the wife was paid for her services or received anything from the husband other than the ability or authority to perform.
“When one accepts the agency [conferred by a power of attorney], she implicitly covenants to use the powers conferred upon her for the sole benefit of the party conferring such power, consistent with the purposes of the agency relationship. See, Dudley v. Colonial Lumber Co., 223 Ala. 533, 137 So. 429 (1931). Therefore, when one accepts the power of attorney, she impliedly covenants to use the powers bestowed upon her for the sole benefit of the one conferring that power on her, consistent with the purposes of the agency relationship represented by the power of attorney. ... The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing....”
*1200 Sevigny v. New South Fed. Sav. & Loan Ass’n, 586 So.2d 884, 886-87 (Ala.1991).
Wachovia contends that the power of attorney gave rise to a legal relationship between the husband and the wife and that this legal relationship conferred on the wife authority over the husband’s affairs and that this conferring of authority thus served as the promise given by the husband for the wife’s performance. However, no precedent is offered for the proposition that, under Alabama law, the mere conferring of actual authority to perform under a purported contract can constitute the promise exchanged by the promisor for that performance. In any event, the terms of the power of attorney required that the authority given by that document be exercised for the husband’s “use and benefit.” See also Harrelson, supra, and Sevigny, supra. Although the assumption of duties by the wife under the power of attorney constitutes the performance by the wife under the power of attorney, the wife could receive no benefit from the authority created by the instrument, and it is unclear how that grant of authority could constitute a “promise” made by the husband to induce the wife’s performance. Thus, Wachovia has not identified a legally cognizable promise or performance on the part of the husband in exchange for the wife’s performance.
Because no promise or performance was extended to the wife by the husband for her performance under the power of attorney, the wife’s performance under the power of attorney was gratuitous. See Kelsoe, 588 So.2d at 878 (holding that a promise not supported by consideration was gratuitous in nature “and created no legally enforceable contract right”). The wife was not prompted to undertake the act of managing a portion of her disabled husband’s affairs by a promise on the husband’s part; instead, the undertaking was gratuitous in nature and did not create any legally enforceable contract right. Id. Although in other factual situations a contractual relationship may be created by a power of attorney, substantial evidence of such a relationship was not demonstrated in this case.
In the absence of a contract, and applying our previously established agency analysis, we conclude that Wachovia’s claim is more accurately described as a claim for damages based on an alleged breach of a fiduciary duty. See, e.g., Jefferson County v. Reach, 368 So.2d 250, 252 (Ala.1978) (“Where the wrong results from a breach of a promise, the claim is ex contractu. However, if the wrong springs from a breach of a duty either growing out of the relationship of the parties, or imposed by law, the claim is ex delicto.”); Barron v. Scroggins, 910 So.2d at 786; Williams v. Williams, 497 So.2d at 483. Because, as Wachovia’s counsel admitted during trial, a breach of fiduciary duty “is a tort” and because no such tort claim was pending at the time of the husband’s death, that claim abated. See Robbins v. Sanders, 890 So.2d 998, 1011 (Ala.2004). See also § 6-5-462, Ala.Code 1975 (“In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives.... ”).
Wachovia also argues that “one can be liable in contract or tort for breaching an express promise to use care.” (Wachovia’s brief, at p. 36.) Although that may be an accurate statement of the present state of Alabama law, it has no application to the facts of this case. In fact, the case relied on by Wachovia, Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala.1987), involved *1201 an express, written promise by the defendant accounting firm to use generally accepted auditing and accounting principles and the plaintiffs written acceptance of the terms of the offered services. In passing on the viability of the plaintiffs claim in light of the applicable limitations periods, this Court stated:
“In Alabama, one who contracts with another and expressly promises to use due care is undoubtedly liable in both tort and contract when his negligence results in injury to the other party. He is liable in contract for breaching an express promise to use care. He is liable in tort for violating the duty imposed by law on all people not to injure others by negligent conduct. The injured party has the choice of remedies when a contract contains an express promise to use due care. Eidson v. Johns-Ridout’s Chapels, Inc., 508 So.2d 697, 701 (Ala.1987); Comment, Contractual Recovery for Negligent Injury, 29 Ala. L.Rev. 517, 524-25 (1978).”
Blumberg, 514 So.2d at 927.[9] Here, as discussed above, we conclude that there was no contract between the parties; therefore, the holding in Blumberg is clearly inapposite.

Conclusion

Wachovia failed to present substantial evidence of a necessary element of the breach-of-contract claim, i.e., the existence of a valid contract; therefore, we conclude that the trial court erred in submitting the breach-of-contract claim to the jury. Consequently, the judgment on that claim is due to be reversed. Because we reverse the judgment on the breach-of-contract claim, the trial court’s judgment that Wa-chovia’s claims for equitable relief are moot is also due to be reversed. We therefore remand the cause for Wachovia to present its equitable claims seeking recovery of the assets allegedly improperly seized by the wife.
1071189 — REVERSED AND REMANDED.
1071239 — REMANDED AND REMANDED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ„ concur.
MURDOCK, J., dissents.

. The record reflects that the wife changed her will immediately subsequent to the period of hospitalization in 2006, allegedly on grounds that her husband "had an adequate estate of his own.” The wife’s prior will had left her entire estate to the husband should he survive her by 90 days.

. Autrey also moved to intervene, alleging the exact same causes of action previously asserted in Wachovia's amended complaint Au-irey is not a party to either appeal.

. Smith, individually, and Maria do not appeal from the trial court’s judgment on their counterclaims; Everett is also not a party to these appeals.

. Smith does not pursue a remittitur on appeal.

. This appears to be the law in other jurisdictions as well. See Tennessee Fanners Life Reassurance Co. v. Rose, 239 S.W.3d 743, 749 (Tenn.2007) ("The execution of a power of attorney creates a principal-agent relationship.”); Lease v. Commissioner of Internal *1197 Revenue, 3 T.C.M. (CCH) 404, 408, 13 T.C.M. (P-H) 44, 137 (docket no. 542, April 28, 1944) (analysis of the powers and duties under subject powers of attorney demonstrated "no more than the relationship of principals and agents”); Arcweld Mfg. Co. v. Burney, 12 Wash.2d 212, 221, 121 P.2d 350, 354 (1942) ("By ‘power of attorney' is commonly meant an instrument in writing by which one person, as principal!,] appoints another as his agent and confers upon such agent the authority to act in the place and stead of the principal for the avowed purpose, or purposes, set forth in the instrument.”).

. This Court and others have applied general principles of contract inteipretation when construing written powers of attorney. See, e.g., Thompson v. Ware, 200 Ala. 624, 76 So. 982 (1917); In re Trust of Jameison, 300 Mont. 418, 423, 8 P.3d 83, 87 (2000) ("Powers of attorney generally are construed by the rules governing the inteipretation of written instruments.”); and Restatement (Second) of the Law of Agency § 32 (1958) ("Except to the extent that the fiduciary relation between principal and agent requires special rules, the rules for the interpretation of contracts apply to the interpretation of authority.”). However, the application of those general principles of construction and capacity is not determinative of the issue before us.

. Wachovia also contends that other states have held that the execution of a power of attorney can create a contractual relationship. See, e.g., Maenhoudt v. Bank, 34 Kan.App.2d 150, 154, 115 P.3d 157, 161 (2005) ("The [power of attorney] is a contract between [the principal] and [her attorney in fact].”); Ashby v. Guillot, 593 So.2d 668, 670 (La.Ct.App.1991) ("A power of attorney is a contract.”); In re Conservatorship of Goodman, 766 P.2d 1010, 1012 (Okla.Ct.App.1988) (“A [p]ower of attorney is a contract of agency.”); Oil Well Core Drilling Co. v. Barnhart, 20 Cal.App.2d 677, 679, 67 P.2d 696, 697 (1937) (“ ‘That the relation between the parties created by the power of attorney is a contract relation is beyond question.' ” (quoting DeLeonis v. Etchepare, 120 Cal. 407, 52 P. 718 (1898))).

. Despite its initial leanings, the trial court allowed the breach-of-contract claim to be submitted to the jury, noting, when trial resumed the following morning, that “the jury issue is whether or not there was a contract between [the husband and wife].”

. In reaching that decision, the Court specifically did not reach "the question ... whether an implied term to exercise due care would also give rise to an action in contract.” Blumberg, 514 So.2d at 927 n. 4.